THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* HENRY CARLTON, Appellant.

The record under the act of 1887, relating to appeals in capital cases (Chap. 493, Laws of 1887) is made up by the clerk, and being prepared upon the request of the appellant, is properly called "his bill of exceptions."

Upon the trial of an indictment for murder in the first degree, the court refused to charge that a police officer has no right to strike or attempt to strike a person he is attempting to arrest. *Held*, that the request was properly refused, as force might be used to overcome resistance or prevent the escape of a fleeing criminal, and the request took no notice of the limitation upon the rule.

The court refused to charge that it was the duty of an officer to give notice of an intention to make an arrest, before using or attempting to use violence, and if without giving such notice, the deceased, a police officer, struck or attempted to strike the accused, or to take him into custody, the defendant had a right to resist, and if, in so doing, he killed the officer, he could not be convicted of murder in the first degree. *Held*, no error; that homicide under such circumstances, even conceding it was the duty of the officer to give notice of an intention to arrest, was neither justifiable nor excusable under the Penal Code (§§ 203, 204, 205), and when deliberately and designedly committed came within its definition of murder in the first degree. (Id. § 183.)

The court also refused to charge that if the defendant was excited by passion, aroused by an insult, and believed the officer was about to strike him with a club, shot the officer while in such passion, he could not be convicted of murder in the first degree. *Held*, no error; that unless the assailed person has reason to fear for his life or the infliction of great bodily harm, he has no right to use a deadly weapon upon the person of another.

The court below assumed the weapon used, viz., a revolver, to be a deadly weapon. *Held*, no error.

(Argued June 25, 1889; decided October 8, 1889.)

APPEAL from judgment of the Court of General Sessions of the city and county of New York, entered upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*William H. Howe* for appellant. An arrest is never to be made with violence, unless the party either flee or forcibly resist, and then only after notice of intention to arrest be given. (Code Crim. Pro. § 174.) It was the duty of the deceased, if he intended to arrest the prisoner at the time of the shooting, to have first given defendant notice of such intention. (Code Crim. Pro. § 180.) Evidence of intoxication is always admissible to explain the conduct and intent of the prisoner. (*Larnigan* v. *People*, 6 Park. 209; *People* v. *Rogers*, 18 N. Y. 9; *O'Brien* v. *People*, 48 Barb. 274; *People* v. *Batting*, 49 How. 392.)

*John W. Goff* for respondent. All of the elements — design, premeditation and deliberation — which constitute the crime of murder in the first degree, were sufficiently proven by the evidence to justify the verdict and satisfy the requirements of the statute. (Penal Code, § 183; *People* v. *Kelly*, 94 N. Y. 526; *People* v. *Hawkins*, 109 id. 408; *People* v. *Beckwith*, 103 id. 360; *People* v. *Conroy*, 97 id. 62; *People* v. *Cornetti*, 92 id. 85; *People* v. *Hovey*, Id. 554; *People* v. *Majone*, 91 id. 211; *Leighton* v. *People*, 86 id. 117.) The jury was the ultimate tribunal upon the question of self defense. (*People*

v. *Kelly*, 94 N. Y. 526; *People* v. *Cignarale*, 110 id. 23.) An officer is justified in making an arrest without a warrant where there is *prima facie* ground for suspecting a felony has been committed. (*People* v. *Wolven*, 7 N. Y. 89; *Burns* v. *Erben*, 40 id. 463; *Boyleton* v. *Kerr*, 2 Daly, 220; *Sternach* v. *Brooks*, 7 id. 142.) The motion as for an arrest of judgment did not lie, and the error, if any, complained of by its denial cannot be reviewed on this appeal. (Code Crim. Pro. § 467; *People* v. *Kelly*, 94 N. Y. 526; *People* v. *Allen*, 43 id. 28; *People* v. *Thompson*, 41 id. 1; *People* v. *Henken*, 36 Hun, 90; *Jacobowsky* v. *People*, 6 id. 524.)

Ruger, Ch. J. The defendant was convicted of the crime of murder in the first degree by the Court of General Sessions of the city and county of New York, and he appeals from the judgment entered thereon to this court, under the recent statute regulating appeals in capital cases. (Chap. 493, Laws of 1887.)

In such cases the record upon which the appeal is heard in the appellate court is made up by the clerk, and the papers composing it are specifically pointed out by the statute. Theoretically this record constitutes a bill of exceptions, and, as it is prepared upon the request of the appellant, it is properly called his bill of exceptions.

The record in this case is, in form, a compliance with the requirements of the statute, and is not obnoxious to the criticism made upon it by the defendant's counsel, that it is not a bill of exceptions made by the defendant.

No question was made upon the trial but that the deceased was killed by a pistol shot, or but that the defendant fired the pistol with the intention of shooting the deceased. The defense, on the merits, was that the shooting was done in self defense. The proof tended to show that the defendant was a man of idle and dissolute habits, about twenty-seven years of age, who left home on the evening of October 28, 1888, to attend a wedding, taking with him a self-cocking revolver containing five chambers, all loaded.

About midnight he left the marriage festivities, and strolling into Third avenue met two of his associates, with whom, from that time until about five o'clock on Sunday morning, he was engaged in visiting and patronizing various drinking saloons in that neighborhood. They finally arrived at Tucker's, a saloon on the corner of Thirty-third street and Third avenue. Here they met one Roesler, a stranger, and, for some undisclosed reason, seemed to think him a favorable subject to annoy and impose upon. They demanded that he should treat them, and, upon his refusal, took his umbrella from him and refused to return it to him on request. Roesler finally obtaining it, left the saloon with the intention of going to his place of residence, which was within a few doors of the saloon on the same street. The defendant and his companions followed him out and had further controversy with him on the street, snatching his umbrella from him, and evading his efforts to retake it. The deceased, who was an officer dressed in a policeman's uniform, came up and commanded the defendant and his companions to give up the umbrella to Roesler and to go home. They apparently obeyed the command and departed, going down Third avenue. Roesler went down Thirty-third street to his home, and while unlocking his door heard some one say: "Here, Charlie, I want to speak to you." He turned around; discovered the defendant and his companions behind him, and was immediately struck a violent blow in the face by the accused. Roesler thereupon commenced and continued to halloo "murder," "watch," "police," and the defendant and his companions fled up the street towards Third avenue. On the corner of the street and avenue they were met by the deceased, and he held out his arms with the apparent intention of stopping them. The defendant's associates dodged away from the officer and running across the street escaped. The defendant, however, advanced until he was within two or three feet of the deceased, and drew his pistol and stood on his defense. He promptly fired four shots therefrom in rapid succession, each shot taking effect upon the officer, two of them being probably fatal. After the second shot some one

was heard to exclaim, " I will kill you." The officer was then sinking to the earth, apparently from exhaustion occasioned by the ·wounds inflicted upon him. After the third shot the defendant backed away from the officer to the center of the street, and, while in the act of retiring, fired the fourth time at the prostrate officer. The noise of the shooting attracted other officers to the place, and the defendant was surrounded and arrested within two hundred feet from the place of the homicide, having thrown his pistol into the middle of the street, where it was found immediately thereafter by one of the officers.

The defendant, who was sworn in his own behalf, stated that the officer advanced towards him with upraised club and struck him, saying at the same time, " I will kill you," and he, fearing that he was in danger of being killed, or suffering great bodily injury, shot the deceased in self defense. This version of the transaction conflicted with the testimony of the eye-witnesses to the affray, and is not supported by the probabilities of the case. The theory that the shooting was done in self defense did not occur to the defendant when he was examined at the station-house, immediately after the affray, for he then denied altogether that he had shot the officer. There can be no reasonable doubt but that the verdict of the jury discrediting the defendant's testimony was fully supported by the evidence.

The questions presented upon the argument relate wholly to exceptions taken by the defendant to the charge and refusals to charge by the trial court. The requests were, most of them, quite obscure and unintelligible ; based upon incongruous and unfounded assumptions of fact, and ignoring, to a large degree, the essential elements upon which requests to charge should properly have been founded.

The first refusal complained of is to the broad request that a police officer has no right to strike, or attempt to strike, a person he is attempting to arrest. This request was properly refused, as it is undoubtedly the right of an officer to use force to overcome resistance, or prevent the escape of a fleeing

criminal, and the request took no notice of the limitations upon the rule.

The second request is of a similar character and ignores altogether the circumstances of flight or resistance as justifying an officer in using force to make an arrest.

The third request was to the effect that it is the duty of an officer to give notice of an intention to make an arrest before using, or attempting to use, violence upon the accused, and if, without giving such notice, he struck or attempted to strike him, or even to take him into custody, the accused had a right to resist; and if, in so resisting, he killed the officer, he cannot be convicted of murder in the first degree. It is quite absurd to assert that such a request correctly states any legal principle. The request, in effect, asked the court to charge that a suspected criminal may deliberately and premeditatedly shoot and kill an officer attempting to make an arrest, irrespective of all other circumstances, without incurring the penalty for murder in the first degree, unless the officer shall, in all cases, first give notice of his intention to arrest.

A homicide committed under such circumstances would neither be justifiable or excusable within the definition contained in the Penal Code (§§ 203, 204, 205, Penal Code), and, therefore, comes within the definition of murder in the first degree. (§ 183, Penal Code.) Even supposing it to be the duty of an officer to give notice of an intention to arrest, before doing so, it by no means follows that the person sought to be arrested has the right to shoot or kill the officer for attempting to arrest without notice.

He may not lawfully offer forcible resistance to such attempted arrest until all other means of peaceably avoiding it have been exhausted, and it is only in the last extremity that the right to use a deadly weapon, under any circumstances, arises. (*People* v. *Sullivan*, 7 N. Y. 396.) For similar reasons the fifth request was properly refused.

There was no proof in the case that required any instruction from the court in relation to the effect which intoxication would have upon the capacity of the accused to form a delib-

erate intention, and the request in relation to that subject was, therefore, properly refused. It may, also, be said that it was not claimed on the trial, but that the defendant deliberately and designedly shot the deceased and effected his death.

The request to charge that, if the accused was excited by passion aroused by an insult received from Roesler, and believed the officer was intending to strike him with a club, and shot the officer, while in such passion, he could not be convicted of murder in the first degree, did not present a case either of excusable or justifiable homicide authorizing the killing of a human being. Neither does it present the case of a person who, in the heat of passion, kills another without using a deadly weapon, or by the use of means neither cruel or unusual. There is no rule of law which authorizes one person to shoot another with a deadly weapon, because that other is about to strike him with a club, unless the assailed person has reason to fear for his life, or the infliction of great bodily harm.

This rule the court most clearly laid down to the jury, and charged them that if the accused was attacked in such a manner, or under such circumstances as to furnish reasonable grounds for apprehending a design to take away his life, or to do him some great bodily harm, and there was reasonable ground for believing the danger imminent, and that such design would be accomplished, he might safely have acted upon appearances and killed his assailant, if that had been necessary to avoid the apprehended danger.

The rule was stated to the jury quite as favorably as the defendant could lawfully claim, and rendered any amplification of the charge on that subject unnecessary.

The counsel for defendant also criticises the expression of the trial court that the instrument used was a dangerous weapon, and claims that this was a question of fact for the jury. We are of the opinion that the court was justified in assuming that this instrument was a dangerous weapon within the authorities. (*Thomas* v. *People*, 67 N. Y. 218; Russell on Crimes, 118, 474.) We have carefully examined the other exceptions taken in the case and find none which require particular notice.

The trial was conducted in a manner that elicited the approval of the defendant's counsel at the close of the case, and we are of the opinion that no substantial errors were committed thereon to the prejudice of the defendant. The crime seems to have been committed in a spirit of reckless bravado and defiance of law and order, and presents no circumstance mitigating the heinousness of the offense. The proof and conceded circumstances of the case left no room to doubt the guilt of the accused, and we think the jury could not properly have arrived at any other conclusion than that reached by them on the trial.

The judgment should, therefore, be affirmed.

All concur.

Judgment affirmed.