## THE PEOPLE v. THILO KEUHN.

*Criminal law—Homicide—Self-defense.*

One is not obliged either to enter his house or lock the door before shooting a party who is advancing towards him in a threatening manner when he is standing near the door, if, in view of all of the circumstances of the case, as they appear to him at the time, he honestly believes that he is in imminent danger of great bodily harm, which can only be avoided by acting in self-defense at once, and before retreating.

Error to St. Clair. (Mitchell, J.) Argued November 17, 1892. Decided December 2, 1892.

Respondent was convicted of murder in the second degree, and sentenced to the State prison for 22 years. Conviction reversed. The facts are stated in the opinion.

*Stevens & Merriam,* for respondent.

*A. A. Ellis,* Attorney General, and *Cyrus A. Hovey,* Prosecuting Attorney, for the people.

DURAND, J. The information filed in this case charges the respondent with the murder of Wesley McDonald on September 15, 1891, at the township of Port Huron, in St. Clair county. Upon the trial he was convicted

of murder in the second degree, and sentenced to the State prison at Jackson for the period of 22 years.

The record discloses that on the day mentioned the respondent, who is a farmer, about 53 years of age, was living with his family, consisting of a wife and five children, upon a small farm in a rather inaccessible place near the Flint & Pere Marquette Railroad track in Port Huron township. He was born in Prussia, speaks the English language brokenly, and it is claimed that he does not understand it perfectly. On the morning of the tragedy the wife of the respondent, who was in the yard near the house, made loud outcries, which attracted the attention of some men, of whom the deceased was one, who were walking along the railroad track.

It is claimed that she had a fit at the time, that she was subject to such attacks, and that upon such occasions she was accustomed to scream and cry aloud. While the men were listening to the outcries, and discussing the reason for them, one John Murphy, who had been to the house, and been told by the respondent's wife that her husband had beaten her, came up and told them that the respondent had been or was beating his wife. Thereupon three of the party, consisting of Ed. Goodrich, John Murphy, and Wesley McDonald, the deceased, started for the respondent's house. They walked rapidly, and, as they approached the house, increased their pace to a run. The respondent saw them coming, and left the barn, where he says he was at work, for the house, where he got a gun, and went to the door, and ordered them away, and threatened to shoot if they did not go. A controversy then arose between all the parties, and it is evident from the record that they were all very much excited. The respondent was given to understand that these men supposed that he had been whipping his wife, and that they were angry and indignant because of it, and in the excitement of the

occasion he insists that McDonald threatened to kill him, and he so testified; that he was afraid that he would do so; and that, while McDonald was advancing upon him in an angry and threatening manner, he shot and killed him. The witnesses do not agree fully in relation to what did actually occur at the time, but all agree that there was a good deal of excitement, and much improper and threatening language used on both sides. With this, however, we have nothing to do, and will therefore refrain from commenting upon it.

The respondent insisted upon the trial that at the time of the shooting he honestly believed that his ·life was in danger, or that he was in danger of great bodily harm, and that the shooting was necessary in order to save himself from such threatened danger. Upon this point the circuit judge charged the jury as follows: .

"This man had a right to defend his home, including the curtilage, if he thought there was imminent danger of his being assaulted at the time, and the shooting of the man was the only way to get rid of that assault. Still he would not have· the right to kill him, except when he goes into the house, and locks the door."

This portion of the charge cannot be sustained. The respondent was not obliged either to go into his house or lock the door before he did the shooting, if, in view of all the circumstances of the case, as they appeared to him at the time, he honestly believed he was in imminent danger of great bodily harm, and that this could only be avoided by acting in defense of himself at once, and before retreating. Under the ruling made, the jury were obliged to convict the respondent, without any regard as to what his fears were at the time of the shooting, or what reason he might have had for shooting the deceased, simply because he did not go into his house and lock the door before he pro-

ceeded to that extremity in his defense. This is contrary to the rule laid down in this State in such cases.

Under the evidence in the case the jury should have been permitted, under a proper charge, to consider all the circumstances connected with the shooting; the number of the men who went to respondent's house; their excited manner, as well as that of the respondent; his imperfect knowledge of the English language, by reason of which he might have misunderstood the threats made against him, and interpreted them as threats to kill; the conduct of all the parties, and all that was said and done by them or either of them, as well as the intemperate talk indulged in by them upon the occasion; and from such a consideration it was the right of the jury to say whether or not at the time and place it was done the shooting of the deceased was justifiable, or whether or not the degree of the offense was greater than manslaughter. If, after such a consideration, the jury found that the respondent, while acting honestly in fear of his life or of great bodily harm, shot the deceased in order to save himself therefrom, then it was their duty to acquit him. *Pond v. People*, 8 Mich. 150; *Hurd v. People*, 25 Id. 405; *People v. Lilly*, 38 Id. 270; *Brownell v. People*, Id. 738; *People v. Lennon*, 71 Id. 298.

Inasmuch as the error mentioned is decisive under the authorities quoted, none of the other assignments of error will be considered.

The judgment will be reversed, and a new trial granted, and the respondent is remanded to the custody of the sheriff of St. Clair county.

The other Justices concurred.