## COURT OF APPEALS,

### Dec., 1914.

# THE PEOPLE v. NEWTON TOMLINS.

### (213 N. Y. 240.)

MURDER—SELF-DEFENSE—WHEN DEFENDANT ATTACKED IN HIS OWN HOUSE JUSTIFIED IN KILLING HIS ASSAILANT.

Defendant shot and killed his son. On the trial the father maintained that he had acted without premeditation, when blinded by passion because of blows and insults, and that he had acted justifiably, in lawful self-defense, in his own house. The court charged that if the defendant "could have gotten off the porch, and gone across the lot, and down the road, or around the house, or anywhere, to a place of safety, then the law says that he should have done so, and that he had no right to use the weapon aganist his son, unless all reasonable means of retreating were cut off, and the boy was threatening him with bodily injury, or putting his life in danger." *Held*, that where a man is assailed in his own house, he need not flee as far as he can, as in other cases of self-defense, and that if the situation justified the defendant as a reasonable man in believing that he was about to ·be murderously attacked he had the right to stand his ground.

APPEAL from a judgment of the Supreme Court rendered January 2, 1914, at a Trial Term for the county of Rockland upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*Frank Comesky* for appellant.

The charge was prejudicial and unjust to the defendant and erroneous. (People v. Dankberg, 91 App. Div. 67; State v. Brooks, 79 S. C. 144; Beard v. United States, 158 U. S. 550; People v. Corey, 157 N. Y. 351.)

*Thomas Gagan, District Attorney,* for respondent.

The charge upon the question of self-defense was strictly in accordance with the law. (Penal Law, § 1055; People v. Sullivan, 7 N. Y. 396; People v. Carleton, 115 N. Y. 618; People v. Johnson, 139 N. Y. 358; People v. Constantino, 153 N. Y. 24; People v. Kennedy, 159 N. Y. 346.)

CARDOZO, J.:

The defendant shot and killed his son, a young man of twenty-two. The shooting took place on August 26, 1913, in the little cottage in Stony Point where the son had been born and reared. On the trial, the father maintained that he had acted without premeditation, when blinded by passion because of blows and insults. He maintained also that he had acted justifiably, in lawful self-defense. It will not be helpful to state the details of the tragedy. It is enough to say that the verdict of murder in the first degree is sustained by ample proof. We have, therefore, only to inquire whether there was material error in the court's statement of the law. The jury were properly instructed that homicide in self-defense is not justifiable unless there is reasonable ground to apprehend a design on the part of the person slain to commit a felony, or to do some great personal injury to the slayer, and unless also there is reasonable ground to apprehend that the danger is imminent. These instructions were coupled, however, with a statement that it was the defendant's duty, if possible, to retreat and escape. " A man," said the court, " has no right to resort to force and violence against another, even where the danger is imminent, even where he has reasonable cause to believe that he is in danger, unless he has no reasonably safe means of escape and retreat. Before a man can use force and violence under the law for his own protection, the danger must be imminent; he must have reasonable cause for believing that the danger exists,

and then he must be so situated, he must be in such a position, that he cannot safely retreat. That is the law, gentlemen. We may not feel always like retreating in the face of an attack; it may not seem manly to us, but it is the law that if a man can safely retreat, and thereby escape a conflict with another, he must do so, even though it may not seem dignified and manly. To justify this defendant, applying the law to this case, in shooting his son, or shooting at him, or using any force against him, he must have had reasonable cause for believing, not that the boy some time in the future might do something against him, but he must have had reasonable cause for believing that the boy right then, when he came down those stairs and landed on the kitchen floor, was about to attack him. Even then, he would have had no right to use a weapon, or any other force, if he could have gotten away from danger by retreating, if he could have gotten off the porch, and gone across the lot, and down the road, or around the house, or anywhere, to a place of safety, then the law says that he should have done so, and that he had no right to use the weapon against his son, unless all reasonable means of retreating were cut off, and the boy was threatening him with bodily injury, or putting his life in danger."

We think that these instructions are erroneous as applied to the case at bar. The homicide occurred in the defendant's dwelling. It is not now, and never has been the law that a man assailed in his own dwelling, is bound to retreat. If assailed there, he may stand his ground, and resist the attack. He is under no duty to take to the fields and the highways, a fugitive from his own home. More than two hundred years ago it was said by Lord Chief Justice HALE (1 Hale's Pleas of the Crown, 486): In case a man is assailed in his own house, he " need not fly as far as he can, as in other cases of *se defendendo*, for he hath the protection of his house to excuse him from flying, for that would be to give up the possession of his house to his adversary by his flight." Flight is for sanctuary and shelter, and

shelter, if not sanctuary, is in the home. That there is, in such a situation, no duty to retreat is, we think, the settled law in the United States as in England. It was so held by the United States Supreme Court in Beard v. United States (158 U. S. 550). In that case there was a full review of the authorities, and the rule was held to extend not merely to one's house but also to the surrounding grounds. That case has been followed by the same court in later decisions. (Alberty v. U. S., 162 U. S. 499; Rowe v. U. S., 164 U. S. 546, 557.) The same rule is enforced in Michigan (Pond v. People, 8 Mich. 150; People v. Keuhn, 93 Mich. 619); in New Jersey (State v. Zellers, 7 N. J. L. 220); in Vermont (State v. Patterson, 45 Vt. 308); in Wisconsin (State v. Martin, 30 Wis. 216); in Alabama (Green v. State, 96 Ala. 24); in Georgia (Haynes v. State, 17 Ga. 465); in Florida (Wilson v. State, 30 Fla. 234); in Ohio (State v. Peacock, 40 Ohio St. 333); in North Carolina (State v. Taylor, 82 N. C. 554); and in other jurisdictions. It is also stated as undoubted law in all the leading treatises. (1 Wharton Crim. Law, sec. 633; 1 Bishop Crim. Law, secs. 858, 859; 3 Russell on Crimes, 207, 213; 2 East Pleas of the Crown, 372; Foster's Crown Cases, c. 3, p. 273.) The rule is the same whether the attack proceeds from some other occupant or from an intruder. It was so adjudged in Jones v. State (76 Ala. 8, 14.) "Why," it was there inquired, "should one retreat from his own house, when assailed by a partner or co-tenant, any more than when assailed by a stranger who is lawfully upon the premises? Whither shall he flee, and how far, and when may he be permitted to return?" We think that the conclusion there reached is sustained by principle, and we have not been referred to any decision to the contrary. The duty to retreat, as defined in the charge of the trial judge, is one applicable to cases of sudden affray or *chance medley*, to use the language of the early books. (Blackstone Comm. bk. IV, ch. XIV; East Pleas of the Crown, *supra*; Russell on Crimes,

*supra;* People v. Fiori, 123 App. Div. 174, 188.) We think that if the situation justified the defendant as a reasonable man in believing that he was about to be murderously attacked, he had the right to stand his ground.

The cases in this court relied on by counsel for the People hold nothing to the contrary. People v. Sullivan (7 N. Y. 396) is referred to as a case where the homicide was in the defendant's dwelling. The murdered man and the defendant lived in a boarding house. Their rooms were on different floors. The affray started in the defendant's room. The two men separated, and the defendant's victim went down stairs. At the foot of the stairs he turned and went back. The defendant, instead of taking shelter in his own room, remained on the landing of the stairway. The fight was renewed, and the murder followed. It was with reference to that situation that the court said that the defendant was under a duty to avoid the encounter. He had only to enter his own room and he would have been safe. The court did not hold that it was his duty to abandon his home and take refuge in the streets. Its brief opinion, little more than a summary statement of its conclusion, betrays no purpose to lay down a rule so far in conflict with precedent. Other cases, such as People v. Kennedy (159 N. Y. 346); People v. Constantino (153 N. Y. 24); People v. Johnson (139 N. Y. 358), and People v. Carlton (115 N. Y. 618) are instances either of sudden broils in public places or of the voluntary renewal of a quarrel which had once subsided. A man who is himself the aggressor or who needlessly resumes the fight, gains no immunity because he kills in his own dwelling. General statements to the effect that one who is attacked should withdraw, must be read in the light of the facts that led up to them. We think also that there is nothing in the statutes of this state that enlarges in such conditions the duty to retreat. The present statute (Penal Law, section 1055) is a re-enactment of the Penal Code (section 205) and this in turn was a re-enactment

in substance, though not in form, of the Revised Statutes (2 R. S. 630, section 3). The notes of the revisers state that the revision was intended to be declaratory of the law as stated by most of the writers on the subject (citing Russell on Crimes, 699, 700), and as established by decision in Massachusetts and New Jersey.

The portions of the charge, which we thus hold to be erroneous, were not excepted to by the defendant's counsel; and the question remains whether the erroneous statement of the duty to retreat requires us to reverse in the absence of an exception (Code Crim. Proc. section 528). The defendant admitted, on cross-examination, that it was possible for him to run away from the house, and escape the danger. The charge that it was his duty to escape, if he could, was, therefore, equivalent to an instruction to the jury that the defendant had failed to justify the homicide on the ground of self-defense. It was thus a direction to find the defendant guilty, at least of some degree of crime. (People v. Walker, 198 N. Y. 329, 334.) The situation is the same in effect as if the issue of self-defense had not been submitted to the jury at all. It was submitted in form, but not in substance, for the submission was coupled with instructions that predetermined the answer. It is the defendant's right to have the question of his guilt determined by the verdict of a jury rather than by the judgment of this court; and whatever our own opinion of his guilt may be, we cannot say, until it has been passed upon by a jury, that justice has been done. (People v. Jung Hing, 212 N. Y. 393, 404.)

The judgment of conviction should be reversed, and a new trial ordered.

WILLARD BARTLETT, Ch. J., WERNER, HISCOCK and HOGAN JJ., concur; COLLIN and CUDDEBACK, JJ., dissent.

Judgment of conviction reversed, etc.