## SUPREME COURT — APPELLATE DIVISION — THIRD DEPARTMENT.

### November 13, 1918.

### THE PEOPLE v. PEARL MARCELLUS.

(184 App. Div. 711.)

MANSLAUGHTER—ADMISSIBILITY OF EVIDENCE OF CRIMES NOT CHARGED IN INDICTMENT—EVIDENCE AS TO SUBSEQUENT ADULTERY BY DEFENDANT.

Upon the prosecution of a defendant charged with the crime of manslaughter in the first degree, in that she had shot and killed a man after he had made a second forcible entry into her house with the apparent intent of committing a criminal assault upon her, using a revolver which she had found on the afternoon of the crime, it is reversible error to admit evidence that the defendant committed adultery some six or seven hours after the shooting, and eleven miles from the scene of the tragedy, as such act has no relation to the shooting and cannot legitimately tend to modify or characterize the killing.

APPEAL by the defendant, Pearl M. Marcellus, from a judgment of the County Court of Saratoga county, entered in the office of the clerk of said county on the 14th day of February, 1918, convicting her of the crime of manslaughter in the second degree.

*Butler, Kilmer & Corbin (Harold H. Corbin* of counsel), for the appellant.

*Charles B. Andrus, District Attorney,* for the respondent.

WOODWARD, J.:

The defendant is charged with the crime of manslaughter in the first degree, and has been convicted in the second degree. That the defendant shot and killed one John Foles, in the town

·of Milton, Saratoga county, on the 1st day of November, 1917, is. not disputed. The evidence shows that while the defendant was at her home with a girl friend named Margaret Seeley, Foles came to the house, located on a secluded road remote from neighbors, and demanded admittance; that he was refused, and that he thereupon forced the door and entered the house; that after some loud and profane talk the defendant succeeded in ·ejecting Foles and locked the door; that Foles again forced the door, and that the defendant retreated to a stand on which a revolver lay, reached out and got it and fired the fatal shot. There was evidence which might well have justified the jury in finding that Foles was intent upon a criminal assault upon the defendant, and that she was justified in the shooting, and if the evidence had been submitted to the jury at this point it may very well be doubted if they would have her found her guilty of a crime.

The People were not content to rest their case, however, but, over the defendant's objections and exceptions to the rulings of the court, introduced evidence to show that subsequent to the shooting, and on the same evening, the defendant, with Margaret Seeley, met two men at a roadhouse near Saratoga Springs, and that the defendant committed adultery with one of these men. With this evidence in the case the defendant asked to withdraw a juror, and generally sought by all reasonable means to prevent the case going to the jury, but without result. The important question here is whether this evidence of a further crime on the part of the defendant was properly in the case.

We think there can be no doubt that the court erred in permitting the evidence to be introduced. This alleged act of adultery, committed some six or seven hours after the shooting, and eleven miles from the scene of the tragedy, had no relation to the shooting, and could not legitimately tend to modify or characterize the killing. This shooting took place in the defendant's own home; and the Court of Appeals has held that

where a man is assailed in his own home he need not flee as far as he can, as in other cases of self-defense, and that if the situation justified the defendant as a reasonable man in believing that he was about to be murderously attacked he had the right to stand his ground. (People v. Tomlins, 213 N. Y. 240.) Here the evidence is undisputed that Foles had twice forced an entrance to the defendant's home, and his conduct was menacing in a high degree, and if the jury had not been prejudiced by the evidence tending to show the defendant's wantonness it is hardly conceivable that she could have been convicted of the crime of manslaughter in the second degree. Adultery on the part of a woman is a crime of compliance, and the fact that the defendant was willing to gratify the desires of a married man had no tendency to show that she would willingly and recklessly cause the death of another man. There was no question about the killing. The only question was as to the character of the crime; and nothing that the defendant did after the shooting, which did not tend to show an attempt to escape or to characterize the particular act, could have any proper place in the trial. No one pretends that the defendant made an effort to escape; she merely kept a previous engagement with a married man, and, while such conduct cannot be approved, it had no place in the trial of this indictment, because it afforded no legitimate light upon the character of the transaction at her home. The killing being proved, anything which bore upon events leading up to the tragedy, and which were immediately identified with it, were proper, but to follow the defendant and prove her subsequent conduct, along a different line, could have no other effect than to prejudice the jury against her, and to induce a verdict of guilty where otherwise such a verdict was highly improbable. There can be no doubt of the general rule that evidence of crimes not charged in the indictment is inadmissible; and we are of the opinion that the evidence received in this case does not come within any of the exceptions set forth in People v. Molineux

(168 N. Y. 264, 16 N. Y. Crim. 120) or any other well-considered case. The crime charged against her did not involve intentional killing; she was not at the time of the killing engaged in committing, or attempting to commit, a misdemeanor affecting the person or property either of the person killed or of another, and the evidence complained of did not tend to show any of these facts. We may assume that the shooting was done in the heat of passion and it is conceded to have been done with a dangerous weapon, but the undisputed evidence shows that this revolver was found by the defendant on the afternoon of the tragedy while she was looking over some things in a trunk or drawer, and that it was laid out with other things with no apparent purpose, and that it was not made use of until after Foles had made a second forcible entry of the house, and when it became obvious that he was resolute in his purpose. It cannot be fairly said that the fact that the defendant then contemplated meeting another man that evening had any bearing upon the shooting. She was not at the time committing any offense. She was in her own home, and it is not now the law, and never has been, that a man assaulted in his own dwelling is bound to retreat. She had a right to defend herself in her own home against one who had entered by force, and she had a right to have the issue of her guilt of this crime determined upon the facts of the particular case, not upon the plea that she was wild and wanton, and stood in need of correctional institutions.

The judgment appealed from should be reversed and a new trial ordered.

All concurred.

Judgment of conviction reversed and new trial ordered.