Heffernan, J.
Defendant was indicted by the Grand Jury of Chemung County for the crime of murder in the second degree. The indictment charged that on the 14th day of August, 1948, she shot and killed her husband with a .22 caliber rifle.
After a trial in the Chemung County Court she was convicted of the crime of manslaughter in the second degree and was thereupon sentenced to be confined in the State prison for women at Bedford Hills for a term of not less than five years nor more than ten years.
Thereafter defendant obtained a certificate of reasonable doubt from Mr. Justice Heath and was enlarged on bail. From the judgment of conviction she has come to this court.
The record before us presents a sordid picture. Defendant and deceased intermarried at Ottawa, Kansas, in 1940. After residing there for several years they removed to this State and after living at various places they finally located in Chemung County.
During their marital career the conduct of deceased toward defendant was most reprehensible. For practically the entire time he was addicted to the excessive use of intoxicating liquors. Rarely indeed, was he temperate. When he abstained from intoxicants defendant said: “ He was grand. He was just like a husband should be.” In his drunken orgies he was the personification of viciousness and brutality. In his fits of rage he not only tortured defendant mentally but frequently assaulted her violently. Again and again he threatened her life. Not *668 content merely with resorting to threats on several occasions he attempted to execute them. No one reading this record can escape the conviction that during his periods of debauchery this wife lived in mortal fear of her husband.
On the evening of the homicide defendant and deceased were invited to the home of mutual friends and the invitation was accepted. Before, during and after the social call, deceased consumed large quantities of alcohol. Upon returning to their home defendant was preparing to retire. She was disrobing in the bathroom and without warning deceased entered that room and said: “ I am going to close your mouth for good.” Whereupon he struck her a violent blow on the head which knocked her into an adjoining closet. The rifle in question was in this closet. Defendant in her frenzied and distraught condition picked up the weapon and meanwhile decedent had gone to the kitchen. When she left the bathroom with the gun in her hand and while standing at the kitchen door she testified deceased made a motion to strike her either with a beer bottle or some other object and she said: “ I just fired the gun and I don’t remember anything else. I thought he” was going to kill me.” Surely defendant at that time had every reason to believe that she was in grave danger of injury or death at the hands of decedent.
Defendant made no attempt to conceal or cover up the fatal occurrence. She immediately called for assistance and a physician and the State police were summoned. The doctor testified that when he arrived on the scene defendant “ was extremely emotional, crying a great deal and upset.” Instead of promptly arraigning her before a magistrate and permitting her to secure counsel defendant was interrogated by the police authorities for many hours continuously at the conclusion of which they obtained from her a written statement describing in detail the events which we have sketched and which substantially accords with her testimony at the trial.
In submitting the ease to the jury the court correctly defined murder in the second degree and manslaughter in the first and second degrees and also excusable and justifiable homicide.
In discussing the elements of justifiable homicide we think the court erred as a matter of law to the prejudice of defendant and thereby misled the jury. In its instructions on this subject the court said: “ Before a party can justify the taking of life in self defense, he must show that there was reasonable ground for believing he was in great peril; that the hilling was necessary for his escape, and that no other safe means was open to *669 Mm. * * * If you find that the killing was necessary under all the circumstances of the case as I have instructed you, you may find that she killed in self defense and she should be acquitted, but if that necessity is lacking, if any other safe means were open to her, she cannot justify the taking of her husband’s life in self defense.” (Italics supplied.) Defendant’s counsel requested the court to charge that “ there was no duty on the part of this defendant to avail herself of any avenue of escape, if such there should be.” The court refused to so charge and defendant excepted.
That the jury was confused by the court’s charge and its refusal to accede to defendant’s quoted request is apparent from what subsequently happened. After considering the case for six hours the jury returned for further instructions on the subject of self defense. In response to the request the court said: “ Before a party can justify the taking of life in self defense, he must show that there was reasonable ground for believing he was in great peril; that the hilling was necessary for his escape, and that no other safe means was open to him. When one believes himself about to be attacked by another, and to receive great bodily injury, it is his duty to avoid the attack if in his power to do so, and the right of attack for the purpose of self defense does not arise until he has done everytMng in his power to avoid its necessity. So in considering her danger, was the danger so imminent that the hilling was necessary for her escape, and no other safe means were open to her? If you find that the Mlling was necessary under all the circumstances of the case as I have instructed you, you may find that she Mlled in self defense and she should be acquitted, but if that necessity is lacking, if any other safe means were open to her, she cannot justify the taking of her husband’s life in self defense.” (Italics supplied.) What the court meant by the phrase “ that the killing was necessary for her escape ” must remain a mystery. There was no duty on the part of defendant to flee from her own home. She was justified in believing that she was in imminent danger. Under such circumstances she had a lawful right to defend herself (People v. Tomlins, 213 N. Y. 240).
We are also convinced that the court seriously erred in its charge on the subject of good character. Defendant called many witnesses who testified to her good character. The prosecution made no attempt to impeach or contradict them. In its •main charge in commenting on this aspect of the case the court said: “ The defendant has introduced evidence tending to show the good character of the defendant for truth and veracity. If, *670 in the present case, the good character of the defendant in this respect is proved to your satisfaction, then such fact is to be kept in view by you in all your deliberations, and it is to be considered by you in connection with the other facts in the case; and if after a consideration of all the evidence in the case, including that bearing upon the good character of the defendant, the jury entertain a reasonable doubt as to defendant’s guilt, then I charge you it is your duty to acquit here. ’ ’
Evidently the jury failed to comprehend what the court meant to convey by the language which it used, because when its members returned for further enlightenment on this subject the court repeated the portion of the charge which we have quoted and then made this statement: “ That does not mean that you can take good character by itself and eliminate all other evidence as if there were no other evidence, but it means that standing by itself it is sufficient to raise a reasonable doubt, if you believe it.” (Italics supplied.)
The following colloquy between the court and the District Attorney then occurred.
‘ ‘ By Mr. Reynolds: I am not sure, your honor, that the right instruction has been given as to character evidence. The last sentence that you gave was to the effect that good character standing alone was sufficient to warrant the jury in acquitting her on that ground. I am sure that is not what you meant.
“ By the Court: Taken with all the other evidence in the case. That is what I have said two or three times and I thought it was clear.
“By Mr. Reynolds: You ended up saying good character was sufficient for acquittal, but you didn’t mean that.
“ By the court: No, taking all the evidence into consideration.” (Italics supplied.)
Bearing in mind the charge of the court in connection with its responses to the contentions of the District Attorney, the jurors would have to be endowed with the gift of divination to understand just what weight they should give to the evidence on the question of defendant’s good character. Evidence of good character is a matter of substance, not of form, in criminal cases, and must be considered by the jury as bearing upon the issue of guilt, even when the evidence against the defendant may be very convincing (People v. Colantone, 243 N. Y. 134).
The jury should have been told in plain and concise language that when the evidence of good character raises a reasonable doubt as to the guilt of a person accused of crime she is entitled *671 to an acquittal although without such evidence no doubt as to her guilt would exist (People v. Conrow, 200 N. Y. 356). Under the facts in this record the jury, if properly instructed, might very well give the defendant the benefit of the presumption of innocence that arises from good character, no matter how conclusive the other testimony appeared to be.
Defendant’s counsel has made no assignment of error in respect to the court’s charge on this subject nor did he except thereto. The absence of an exception is not fatal. Under our broad powers of review we may grant a new trial when satisfied that the verdict is against the evidence on the law or that justice requires it whether any exception shall have been taken in the court below or not (Code Crim. Pro., § 527; People v. Viscio, 241 App. Div. 499).
The judgment appealed from should be reversed on the law and facts and a new trial granted.