Brewster, J.
(dissenting). The primary facts which brought about the conviction are not in dispute. That defendant shot and killed her husband with a .22 caliber rifle while they were alone in their home on the evening of August 14, 1948, was freely admitted by the defendant and clearly proven.
The immediate circumstances which led to the homicide were related by the defendant herself on two occasions shortly after its commission and before her arrest. There are no serious contradictions between her two recitals or between them and her testimony at the trial. No issue is raised as to the admissibility of her statements, and the law applicable to their competency and probative effect was correctly declared to the jury, and in such manner that there neither is nor can be any complaint about that matter. The defendant, at the trial, in effect, admitted the voluntary character of her prior statements. Those statements and her testimony at the trial are replete with recitals concerning the unfortunate drinking habits of the deceased resulting in alcoholism, and of the discomfitures and sufferings they had occasioned her. These recitals covered their marital history as well as the incidents which shortly preceded and precipitated her homicidal act. Defendant’s statements made prior to her arrest and her amplifications thereof at the trial, present the deceased with a Jekyll and Hyde characterization; as an alcoholic who, when in that character, ofttimes misbehaved, plagued and abused her in divers ways, but when sober she was wholly contented with him. The evidence is that with the exception of one brief interval she had never *672 found it necessary or desirable to interrupt their marital relationship although she was continuously capable of self-support and partly self-supporting. The history of her marital life, covering a period of some eight years, as detailed in her voluntary statements, shows no instance of an attempt upon the part of deceased to kill or seriously harm her.
In the afternoon and evening of the homicide deceased was somewhat intoxicated. Earlier that evening they paid a social visit at the home of mutual friends. While there unpleasantness ensued. A prior quarrel which had arisen a few hours before, continued and was augmented by deceased’s misbehavior. Upon their return home the defendant insisted upon retiring for the night. Deceased, having had no food that evening, repeatedly requested that defendant prepare some and she refused. The quarreling, provoked by the deceased and participated in by his wife, continued. During its progress defendant’s testimony is that the deceased struck her with his hand while she was in the bathroom preparing to retire and knocked her from off a stool and to the floor. Admittedly he then left her, went out from the bathroom, then through another room and into their kitchen where he sat down in a chair at a table, and he was in that place and position, with a bottle of beer before him, when the defendant, having possessed herself of the loaded rifle, came to the kitchen doorway and shot him in the back. In her first statement she answered as follows:
“ Q. When you fired the gun where was your husband? A. He was sitting there at the table in the kitchen.” And as to that there has been no denial by her.
In my opinion the proof overwhelmingly supports the verdict and would have, supported one for the higher crime charged. Defendant’s lethal weapon was a bolt action rifle. It had been stored away with other things in a cupboard closet off the bathroom. The bolt had to be manipulated in order for the weapon to be loaded for firing and to be reloaded after each shot. The evidence is ample that at the time in question the defendant fired it at her husband three times, one of which shots killed him. She admitted firing three times, and this was corroborated by the two bullet holes in the wall of the kitchen and the finding of three empty cartridge shells on the floor in the dining room. There is ample evidence that after she possessed herself of the rifle by sorting it out and taking it from the cupboard closet off the bathroom, that she loaded it from a box of loaded cartridges kept in a drawer in the dining room.
*673 It seems to me that the argument that the verdict was against the evidence is a mere plea that the jury should somehow have exonerated her from any crime because of her prior treatment by the deceased, and of her upset condition at the time she committed her murderous act.
Speaking of the charge generally, it seems to me that it may not be read without receiving an impression of its utter fairness both to the People and to the defendant. It was orderly arranged, fully extensive in covering all of the defendant’s rights and so plainly and simply phrased as to admirably instruct the jury in what I consider to be all the applicable rules of law.
Appellant’s real contention comes down to that part of the charge which related to justifiable homicide. There her counsel takes an excerpt from Judge Cabdozo’s opinion in People v. Tomlins (213 N. Y. 240) and by an endeavor to make its application to this case render the charge erroneous in its treatment of the law as to justifiable homicide. The excerpt relied upon stems from the premise of one being attached in his own home: In such a case he may lawfully stand Ms ground in self defense — he is not obliged to leave his home when thus attacked and seek shelter elsewhere. There is no evidence in this case that when defendant possessed herself of the loaded rifle and went to the kitchen doorway and shot her husband, she was under any attack by Mm. Thus the trial court in its main charge did not specifically state the rule as embodied in the excerpt from the Tomlins case (supra), and earlier authorities. The evidence here all points to the fact that at the time of the homicide the very worst that confronted the security of the defendant was an apprehension on her part that her husband might resume his prior misbehavior toward her. But this apprehension, under any view of the evidence, could have come to her only during an appreciable interim wherein their quarreling had ceased and when they were separate and apart and in different rooms in the house — she in the bathroom and he out in the kitchen. Thus the rule relied upon from the Tomlins case (supra) seems to me to have been without any evidence which brought forth its relevancy or application. Bather, it was a further rule therein stated, which applied to the factual situation, viz.: “A man who is himself the aggressor or who needlessly resumes the fight, gains no immumty because he kills in Ms own dwelling.” (People v. Tomlins, supra, p. 245.) In no possible view of the evidence did defendant commit her homicidal act in ‘ ‘ actual resistance ” of an attack upon her by deceased. (Penal *674 Law, § 1055, second par., el. 2.j At the time she prepared for her act and when she executed it, any possible apprehension by her of a design by her husband to do her great personal injury was, under any view of the evidence, unaccompanied by such a then imminent danger of the accomplishment of that design (Penal Law, § 1055, second par., cl. 1), as to call forth an express charge as to her freedom from the duty of avoidance of further conflict. Therefore, the charge as given upon justifiable homicide had, I believe, complete sanction in People v. Constantino (153 N. Y. 24, 31-32) and in People v. Kennedy (159 N. Y. 346, 348-349). Thus it is that I feel no error was committed by the omission in the main charge to specifically instruct the jury as to one’s freedom from duty to retreat or escape when in danger of attack in his own home. However, I believe all contention about this matter should fail when it is noted that defendant’s counsel requested such a charge and that such a charge was given; and again where, after the jury had asked for further instructions and defendant’s counsel referred to the matter by saying, “ It was not made clear that the defendant was under no duty to retire or flee from her home ”, the court said, “ I will make that clear now, and I will charge accordingly, as I did originally.” There referring, of course, to the granting of the request to charge in that particular.
It thus appears to me that the real point urged by appellant is the omission of a rule of law from the main charge which was expressly given later by the request of counsel and a rule to which, it seems to me, the defendant was not entitled.
In my view of the matter the trial court correctly charged the law as to the evidence of defendant’s good character. There is no rule of law of which I am aware that the probative effect of such evidence is to be exclusively considered. I regard as nonprejudicial and inconsequential any defect in the charge upon evidence of good character as founded upon the colloquy between the District Attorney and the court. Here the defendant had admitted her homicide.
The judgment of conviction should be affirmed.
Postee, P. J., Beegan and Coon, JJ., concur with Heeeeeetae-, J.; Bbewsteb, J., dissents, in an opinion.
Judgment appealed from reversed, on the law and facts, and a new trial granted.