COMMONWEALTH *vs.* CHARLES HOUSTON.

Suffolk. March 7, 1955. — June 9, 1955.

Present: QUA, C.J., RONAN, WILKINS, & WILLIAMS, JJ.

*Homicide. Self Defence.*

At the trial of an indictment for murder of one stabbed through the heart with a knife during a quarrel with the defendant over dice, it was reversible error for the trial judge to instruct the jury that there was no evidence warranting a finding that the defendant acted in self defence where the Commonwealth had introduced in evidence testimony by police officers of statements made to them by the defendant to the effect that the quarrel led to a struggle in which the victim picked up the knife and attacked the defendant with it and was stabbed in the ensuing "scuffling over the knife."

INDICTMENT, found and returned on December 11, 1953.

The case was tried in the Superior Court before *Kirk,* J.

*Timothy J. Murphy,* for the defendant.

*John F. McAuliffe,* Assistant District Attorney, for the Commonwealth.

WILLIAMS, J. The defendant was tried on an indictment for the murder of one Henry Foster and was convicted of manslaughter. The case is here on his appeal, with a summary of the record, a transcript of the evidence, and an assignment of errors as provided in G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as amended. It was uncontroverted at the trial that, in the early evening of November 5, 1953, the

defendant invited Foster, the deceased, to his apartment on the second floor of 507 Columbus Avenue in Boston to "shoot craps." The men went to the apartment and were there joined by one Figgs, whom the defendant also invited. The game was played on a table in the dining room from which there was a doorway leading into a small kitchen. After losing the small amount of money which he had with him, Figgs retired from the game, but remained watching the other two who continued to play for a period of forty-five minutes to an hour. Shortly before nine o'clock a wordy altercation developed between the defendant and Foster over the dice which were being used. A "tussle" between the men eventuated and Foster was stabbed through the heart with a knife. He died before reaching a hospital and an autopsy disclosed a wound three inches in depth in his left chest, which proceeded downwards from the front of the chest at an angle fifteen degrees from the horizontal.

Other than the parties to the quarrel the only eyewitness to the occurrence was Figgs. He testified that the trouble started by Foster refusing to continue shooting with the dice which the defendant had provided. At that time there was $4 on the table. The defendant demanded that Foster shoot with the dice or give him back the money which he had won, and Foster refused either to shoot or to give back the money. The defendant then walked into the kitchen, pulled out a cabinet drawer, and came out with the knife. "Foster, when he heard the noise, turned around from the table, and walked into the kitchen and when he walked into the kitchen, Charley [the defendant] stabbed him once with the knife . . . in the chest." "The blood squashed out" and he "started tussling" with the defendant. In the tussling a window was broken. There was no tussling before the stabbing. On cross-examination Figgs testified that Foster went into the kitchen behind the defendant when he heard the cabinet drawer open. He was a foot or two behind the defendant and the cabinet was not more than two steps from the dining room door. The de-

fendant walked right to the cabinet drawer, took out a knife, and "raise[d] it up like that" (as demonstrated). Foster grabbed the defendant's hand after he was stabbed. On redirect examination Figgs testified that Foster was in the doorway leading from the dining room into the kitchen when he was stabbed, and on recross-examination testified that he was in the kitchen. There was evidence from the defendant's wife and minor son that they came downstairs when they heard the noise of the broken window and saw the defendant and Foster tussling.

The assignment of error on which the defendant relies relates to the charge of the judge in reference to self defence. He charged, "The defence in this court room is self defence, but it is not open to the jury here. The jury would not be warranted on the evidence in this case in finding . . . that the defendant Houston was suffering such an attack by Foster, that Houston thereupon felt any such great peril of death or imminent bodily harm that he was warranted in using a . . . knife upon Foster."

The defendant did not testify, and what evidence there was concerning self defence other than the testimony of Figgs and the nature of the wound came from the following statements alleged to have been made by the defendant to the police, which were introduced in evidence by the Commonwealth. When the police arrived at the apartment, which was shortly after the stabbing, the defendant was standing by Foster's body which was on the kitchen floor. The defendant said that he did not see the stabbing; that he did not know Foster; and that he was stabbed in another room by some person whom he did not know and who afterwards ran away. When taken to the police station he said that, as a result of words over the dice, "Foster came at him throwing punches in the dining room, and they fought from there into the kitchen where on the kitchen table . . . he picked up a knife to defend himself, and in the struggle Foster got stabbed." On the following morning, after his wife had urged him to tell the truth, he said,

"When we landed in the kitchen, he grabbed the knife and attacked me with the knife. . . . I caught his wrist and we were scuffling over the knife and all of a sudden he bang, bang into my arms." Each was trying to get the knife "and he banged into it." "I didn't have it. He had it."

There was evidence that Foster weighed one hundred ninety-eight pounds, and was five feet nine inches in height, about thirty-three years old, and very heavily muscled. The defendant was thirty-four years old, and was somewhat smaller than Foster. Their comparative weights and sizes were not in evidence. There was no evidence that Foster was of a violent or quarrelsome disposition, or had made any threats against the defendant. See *Commonwealth* v. *Barnacle*, 134 Mass. 215; *Commonwealth* v. *Tircinski*, 189 Mass. 257. In order to create a right to defend oneself with a dangerous weapon likely to cause serious injury or death, it must appear that the person using the weapon had a reasonable apprehension of great bodily harm and a reasonable belief that no other means would suffice to prevent such harm. *Commonwealth* v. *Woodward*, 102 Mass. 155. *Commonwealth* v. *O'Malley*, 131 Mass. 423. *Commonwealth* v. *Crowley*, 165 Mass. 569. The right of self defence does not accrue to a person until he has availed himself of all proper means to avoid physical combat. *Commonwealth* v. *Peterson*, 257 Mass. 473, 478. *Commonwealth* v. *Trippi*, 268 Mass. 227. In *Monize* v. *Bagaso*, 190 Mass. 87, 89, it was said that "Ordinarily the question how far a party may properly go in self defence is a question for the jury, not to be judged of very nicely, but with due regard to the infirmity of human impulses and passions. But where . . . it is plain that . . . [the defendant] exceeded the limits justified by the occasion, it was the duty of the judge so to rule and instruct the jury."

While the evidence in the present case strongly suggests that the defendant stabbed Foster in circumstances which would not justify the use of a knife, it cannot be said that there was no evidence from which the jury could have

found that he acted in self defence. There was evidence in relation to this issue in the statements made by the defendant to the police. Although hearsay, these statements had probative value and were entitled to consideration by the jury. *Hubbard* v. *Allyn*, 200 Mass. 166, 171. *Commonwealth* v. *Wakelin*, 230 Mass. 567, 576. *Commonwealth* v. *Rubin*, 318 Mass. 587, 591. According to his final statement, Foster attacked him with a knife and was stabbed in the ensuing scuffle. In view of this evidence it was error to instruct the jury that the issue of self defence was not open. The judgment is reversed and the verdict set aside.

*So ordered.*