COMMONWEALTH *vs.* ARTHUR M. LEATE.

Plymouth. March 6, 1967. — April 28, 1967.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

*Homicide.*

A finding of malice aforethought necessary for conviction upon an indictment for murder in the second degree was warranted by evidence at the trial that the defendant, upon hearing his woman companion accuse the victim of attempting to rape her, pushed him to the ground and pulled a knife when he got up on his feet, and that the two men then came together and the victim collapsed with a knife wound from which he died penetrating some four inches into his body; a finding was not required that the homicide was excusable on the ground of having been committed in self-defence since it was not shown that the defendant retreated or took steps to avoid becoming involved with the victim, nor was a finding required that the homicide was voluntary manslaughter only since the evidence was conflicting whether the victim engaged in an affray with the defendant or was the aggressor and no reasonable provocation for sudden passion on the defendant's part was shown.

INDICTMENT found and returned on September 28, 1965.

The case was tried in the Superior Court before *Vallely, J.*

*Daniel J. O'Connor (Eben G. Townes* with him) for the defendant.

*A. Stanley Littlefield,* Assistant District Attorney, for the Commonwealth.

REARDON, J. The defendant Arthur M. Leate appeals under G. L. c. 278, §§ 33A–33G, his conviction of murder in the second degree on an indictment which charged him with the murder of Reimundo Colon on August 28, 1965. The case is before this court on a summary of the record, a transcript of the evidence, and assignments of error. There was evidence as follows.

The defendant was a married man and the father of three children. On Saturday, August 28, 1965, he and Mrs. Geraldine West, a married woman and the mother of three children, with whom the defendant had been keeping company since the beginning of the summer, traveled to Carver in the defendant's automobile in search of Mrs. West's sister, Nellie Cloudman. They found Nellie Cloudman about 4 P.M. at the home of one Pablo Perez–Nieves, a cranberry bog worker. The latter's home was located on Rochester Road in Carver. The deceased, Reimundo Colon, was also present in the house. These three had been playing cards and drinking beer and ginger brandy since early that afternoon. The defendant and Geraldine West joined those in the house and all, with the exception of Mrs. West, continued to drink. The three men later went to a package store and purchased more beer and brandy. Upon their return all of them ate supper and later dancing began. At some point the defendant lay down on a couch and went to sleep. Geraldine West, who desired to leave, attempted without success to awaken him. She then left the house in search of a telephone to arrange transportation. Colon also left the house some five or ten minutes after Mrs. West. He caught up with her as she walked northerly on Rochester Road, grabbed her, knocked her to the ground, and at-

tempted to rape her. She managed to escape and made her way to two different houses to obtain help and have the police summoned. Meanwhile Colon had returned to the Perez–Nieves house. Mrs. West's efforts to summon help proving unavailing, she flagged down an automobile in which Roger Heikkila and Frederick McLeod were riding. She entered the car, sat on the right hand side of the front seat, and was transported back to the Perez–Nieves house. When the car approached the driveway leading to the house the defendant, Colon, Nellie Cloudman and Perez–Nieves were walking up the driveway in search of Mrs. West. It was then about 9 P.M. but the evening was clear. There were no streetlights in the immediate vicinity. Mrs. West alighted from the automobile disheveled and bruised, crying hysterically, ''He tried to rape me.'' When asked by the defendant to identify her attacker she pointed to Colon. The defendant then walked over to Colon and shoved him off his feet. The testimony is in conflict as to what happened immediately thereafter. Mrs. West testified that the defendant, upon hearing her accuse Colon of attacking her, went over to Colon and that the two men began to argue. She became frightened and ran into the woods. By the time she returned Colon was lying on the ground. Nellie Cloudman testified that she went after her sister. As she did so she heard a moan, and upon returning to the others she saw Colon lying on the the road with blood covering the front of his T-shirt. Frederick McLeod, a passenger in the car, testified that he was sitting on the edge of the car seat with the door on the passenger side open and with one foot in the car and one out. He related how the ''tall man'' went over to the man Mrs. West had pointed out and pushed him off his feet. As the smaller man jumped back on his feet the tall man, who McLeod stated resembled the defendant, backed up very close to the car. McLeod saw a knife in his hand. Upon seeing this McLeod exclaimed to Heikkila, the driver of the automobile: ''The guy's got a knife.'' Heikkila told him to get back in the car and they drove off. McLeod's testimony was corroborated to a con-

siderable extent by that of Heikkila. However, the latter neither saw the defendant push Colon nor saw a knife in the defendant's possession.

Pablo Perez–Nieves testified that after the defendant pushed Reimundo Colon to the ground the latter got up and walked toward the defendant. The defendant did not back up but walked toward Colon. When they came together Colon said, "Ugh, ugh," and, "Pablo, Pablo," walked two or three steps, then fell on the road. As Colon fell to the ground Pablo saw a knife in the defendant's hand.

The defendant admitted that he pushed Colon to the ground after Mrs. West had pointed him out as her attacker. He then testified that Colon got back onto his feet and came after him with a knife. The defendant stated that he backed up as Colon pursued him, waving the knife in his face. He grabbed Colon's wrist in an attempt to disarm him. The defendant testified that while he was twisting Colon's wrist Colon got stuck with the knife. At this point, according to the defendant, Colon backed away and stopped struggling. The defendant, not believing Colon had been seriously hurt, then prepared to leave in his automobile.

The defendant was induced to drive Colon to a hospital in Wareham by Perez–Nieves, who threatened to summon the police if he did not do so. There was testimony that on the way to the hospital Geraldine West and Perez–Nieves asked the defendant why he had done it. As soon as Colon's body was removed from the defendant's automobile at the hospital, the defendant and Mrs. West drove off. She left the defendant in Brockton where she took a bus to Boston to evade apprehension. The defendant also went into hiding. He was discovered by police on September 9, 1965, some twelve days later, in a closet in his wife's apartment and placed under arrest.

Colon was pronounced dead on arrival at the hospital. An autopsy revealed that he died as a result of a stab wound of the heart, with resulting massive shock and hemorrhage. The wound was approximately four inches deep, going

through the sternum and piercing the right ventricle of the heart.   There was testimony that the wound was consistent with having been inflicted by a knife found some sixty feet in the woods directly opposite from where Colon's body had lain on the road.   McLeod testified that the knife found in the woods looked like the one he had seen in the defendant's hand.

1.   The defendant assigns as error the refusal by the trial judge to direct verdicts of not guilty of murder in the second degree and of manslaughter, and the denial of his motion for a new trial based on the foregoing assignments. The defendant was found guilty of murder in the second degree.   "Murder which does not appear to be in the first degree is murder in the second degree."   G. L. c. 265, § 1.   "Murder in the second degree is unlawful killing with malice aforethought."   *Commonwealth* v. *Bedrosian,* 247 Mass. 573, 576.   *Commonwealth* v. *Boyajian,* 344 Mass. 44, 48.   Malice includes "every . . . unlawful and unjustifiable motive" and is "implied from any deliberate or cruel act against another, however sudden."   *Commonwealth* v. *Webster,* 5 Cush. 295, 304.   *Commonwealth* v. *Lussier,* 333 Mass. 83, 92.

There was sufficient evidence from which the jury could have inferred malice.   It is undisputed that the defendant, upon hearing Geraldine West's accusation, began to assault Colon by pushing him to the ground.   After Colon got up on his feet Frederick McLeod saw the defendant pull a knife.   Perez–Nieves then witnessed the two men come together again, following which Colon collapsed with a knife wound penetrating some four inches into his body.   As Colon fell, Perez–Nieves saw a knife in the defendant's hand.   The jury could have found that the defendant intentionally stabbed Colon.   "When the killing is caused by the intentional use of a deadly weapon, there arises the presumption of malice aforethought, as that term has long been understood and applied in this Commonwealth."   *Commonwealth* v. *Kendrick,* 351 Mass. 203, 209–210.   *Commonwealth* v. *York,* 9 Met. 93, 104.   *Commonwealth* v. *Webster,*

5 Cush. 295, 305. *Commonwealth* v. *Young,* 326 Mass. 597, 600–601. That the defendant had known Colon for only several hours before the attack, or that the killing occurred within seconds after the defendant learned of the attempted rape, does not foreclose a finding of malice by the jury. *Commonwealth* v. *Webster,* 5 Cush. 295, 304. *Commonwealth* v. *Lussier,* 333 Mass. 83, 92. *Commonwealth* v. *Boyajian,* 344 Mass. 44, 48–49.

The jury were warranted, on the evidence, in not finding that the homicide was excusable on the ground of having been committed in self-defence. The jury were not required to believe the defendant's unsupported testimony that if he killed Colon it was in self-defense. His testimony that Colon came after him with a knife varied considerably from the testimony of all the other witnesses. It is within the peculiar province of the jury to resolve these factual differences. Moreover, "[t]he right of self defence does not accrue to a person until he has availed himself of all proper means to avoid physical combat." *Commonwealth* v. *Hartford,* 346 Mass. 482, 490. *Commonwealth* v. *Peterson,* 257 Mass. 473, 478. *Commonwealth* v. *Trippi,* 268 Mass. 227. *Commonwealth* v. *Houston,* 332 Mass. 687, 690. Even if the defendant's testimony is believed, it contains no showing that he retreated or took any steps to avoid becoming involved with Colon.

Nor was there any evidence which required the jury to find that the crime should be reduced from murder to manslaughter. There is no evidence of involuntary manslaughter. See *Commonwealth* v. *Campbell, ante,* 387, 397, and cases cited. Voluntary manslaughter is "a killing from a sudden transport of passion or heat of blood, upon a reasonable provocation and without malice, or upon sudden combat." *Commonwealth* v. *Soaris,* 275 Mass. 291, 299. *Commonwealth* v. *Bouvier,* 316 Mass. 489, 494. *Commonwealth* v. *Hartford,* 346 Mass. 482, 490–491. See *Commonwealth* v. *Webster,* 5 Cush. 295, 304–308; *Commonwealth* v. *Baker,* 346 Mass. 107, 119. There is no evidence, except that given by the defendant, that the deceased engaged in

an affray with the defendant or was in any manner the aggressor in what occurred between them. Cf. *Commonwealth* v. *Baker*, 346 Mass. 107, 118. See *Commonwealth* v. *Kendrick*, 351 Mass. 203, 209.

In addition, the evidence provides no basis for finding, under an objective test, a reasonable provocation which would result in a sudden transport of passion on the defendant's part. The defendant himself testified that although he was upset by the story told to him by Mrs. West he was not mad. Even if the sight of his woman companion, her clothes dirty and in disarray, crying hysterically that Colon had attempted to rape her, had provoked the acts which ensued, such provocation would not be deemed reasonable within the meaning of our decisions. Words alone cannot provide a reasonable provocation. *Commonwealth* v. *Webster*, 5 Cush. 295, 305–307. *Commonwealth* v. *Hartford*, 346 Mass. 482, 491. See *Commonwealth* v. *Young*, 326 Mass. 597, 601.

2. We have reviewed the evidence in accordance with the responsibility imposed upon us by G. L. c. 278, § 33E, and are of the opinion that justice does not require the entry of a verdict of a lesser degree than that found by the jury or that there be a new trial.

*Judgment affirmed.*