COMMONWEALTH *vs.* ROBERTA E. SHAFFER.

Norfolk.     October 15, 1974. — November 19, 1974.

Present: HALE, C.J., ROSE, KEVILLE, GRANT, & ARMSTRONG, JJ.

*Homicide. Self-Defense. Assault. Evidence,* Relevancy and materiality, Hospital record. *Practice, Criminal,* Exceptions: failure to save exception. *Error,* Whether error harmful.

Even if one is attacked in his home, his right of self-defense does not accrue to him until he has availed himself of all means of avoiding physical combat, including retreat, which may be proper and reasonable in the circumstances.   [660-662]

In a manslaughter case, instructions to the jury distinguishing assault from battery did not leave the jury with the impression that the defendant had no right to defend herself unless the victim committed a battery on her.   [662-663]

The judge in a manslaughter case properly refused to admit hospital records concerning the victim's mental condition which were irrelevant to the defendant's state of mind before she shot the victim or to a determination whether the victim had been the aggressor.   [663-664].

Testimony by a police officer in a manslaughter case that, after a shooting in the defendant's house, he observed no weapon other than the rifle the defendant used did not prejudice the defendant, who later testified that she had never seen a weapon in the house other than the rifle.   [664-665]

In a criminal case, there was no merit in an assignment of error not based on an exception.   [665]

In a manslaughter case, a record of hospitalization of the defendant for tonsillectomy not showing that she had been beaten, was admissible in the discretion of the judge to rebut testimony by her that the victim had beaten her.   [665-666]

INDICTMENT found and returned in the Superior Court on January 7, 1972.

The case was tried before *Dwyer*, J.

*Melvin S. Louison (Jerry E. Benezra & Sheldon J. Cohen* with him) for the defendant.

*John P. Connor, Jr.,* Assistant District Attorney, for the Commonwealth.

HALE, C.J.   The defendant, having been indicted for the murder of one John Ferruzzo, was tried and convicted of manslaughter[1] and was sentenced.   From the evidence presented the jury could have found that the defendant, who was separated from her husband and was in the process of being divorced, resided in her own home, a one story ranch house in Sharon, with her two children.   The victim, whom the defendant had met in 1968, moved into the house in the summer of 1971.   The defendant received several severe beatings at the hands of the victim.   On one occasion when she asked him to leave the home he threatened to kill both her and the children.   She feared for the lives of herself and her children.   Despite the beatings and her fears, the defendant loved the victim and planned to marry him. She had persuaded him to seek psychiatric help.

On the morning of December 16, 1971, the defendant dressed her children and sent them to a playroom in the basement to eat breakfast and to watch television.   She had her breakfast upstairs with the victim, during which there was an exchange of words which ended when the

---

[1] At the conclusion of the testimony, the judge allowed the defendant's motion for directed verdicts as to so much of the indictment as charged murder in the first and second degrees and submitted the case to the jury on the remaining charge of manslaughter.

victim rose and said, "Never mind. I'll take care of you right now." The defendant then rose, threw a cup of tea at the victim, and ran downstairs to the playroom. There she heard the victim walk around on the floor above and then heard him open the door at the top of the basement stairs. At that point he told the defendant, "If you don't come up these stairs, I'll come down and kill you and the kids." She started to telephone the police but discontinued the call upon being told by the victim that he would leave the house if she were to hang up. Shortly thereafter the victim returned to the door at the head of the stairs, whereupon the defendant ran from the playroom to the other side of the basement, took a .22 caliber rifle from its rack on the wall, brought it to the workbench where ammunition for the rifle was kept, and loaded it. As she again started to call the police, the victim started down the stairs. She fired the rifle. The victim fell to the bottom of the stairs, where he died; the bullet had penetrated his heart and aorta.

The defendant's assignments of error raise questions concerning the judge's charge to the jury and his rulings on the admissibility of certain evidence. We affirm.

1. The defendant's initial contention is that the judge in effect instructed the jury that the defendant had a duty to retreat from the basement of her home.[2] She submits that the judge should have instructed the jury that the defendant, who had already gone to the basement, had no duty to retreat further. The defendant relies upon what appears to be the majority rule, that one assaulted in one's home "may stand his ground and resist attack." *People* v. *Tomlins*, 213 N. Y. 240, 244 (1914) (Cardozo, J.).[3]

---

[2] A basement door led outside, and there was testimony that it was open at the time the police arrived.

[3] More recently, see *State* v. *Jackson*, 94 Ariz. 117, 121-122 (1963), and *State* v. *Bonano*, 59 N. J. 515, 519-520 (1971). See also the cases collected in Perkins, Criminal Law, 1005-1012 (2d ed. 1969), and in LaFave and Scott, Criminal Law, 395-396 (1972). Of course,

Commonwealth *v.* Shaffer.

It should be noted initially that the judge did not, as the defendant argues, "in effect" instruct the jury that the defendant had a duty to retreat. Rather, the judge charged that the jury, in determining the reasonableness of the force used by the defendant, should consider evidence of many factors, including "the availability of maneuver room in or means of escape from the basement area." Additionally, the judge charged that the jury could give "consideration" to the fact that the defendant was in her own home "where she had a right to be." That instruction clearly left the determination of the reasonableness of retreat under the circumstances as a question of fact for resolution by the jury; it contained no suggestion of a rigid rule which would apply regardless of circumstances. [4]

The defendant, however, maintains that such a charge was still defective, as it did not give as a positive rule that one is under no duty to retreat if attacked in the home. We find no support for the view that such a statement was required. It has consistently been held in this Commonwealth that "[t]he right of self-defence does not accrue to a person until he has availed all proper means to avoid physical combat." *Commonwealth* v.

---

this view is not unanimous. See *State* v. *Cox,* 138 Maine 151, 165 (1941). It should be noted that this is not a case where the defendant was allegedly assaulted by an intruder. Even in some of those States which adhere to a general rule of no duty to retreat when one is attacked at home, an exception is made where the assailant is a co-occupant of the premises. For this position see *Baker* v. *Commonwealth,* 305 Ky. 88, 92 (1947); *State* v. *Grierson,* 96 N. H. 36, 40 (1949); *State* v. *Pontery,* 19 N. J. 457, 475 (1955); and *Commonwealth* v. *Walker,* 447 Pa. 146, 150 (1972). The American Law Institute has adopted this position. See Restatement 2d: Torts, § 65 (2), at 109. But see, e.g., *Bryant* v. *State,* 252 Ala. 153, 154 (1949), and *People* v. *Paxton,* 47 Mich. App. 144, 147 (1973).

[4] The factors alluded to by the judge were very similar to those which the Supreme Judicial Court suggested the jury should consider in *Commonwealth* v. *Kendrick,* 351 Mass. 203, 212 (1966). Contrast the statement in *Commonwealth* v. *Edmonds,* 365 Mass. 496, 504-505 (1974).

*DeCaro*, 359 Mass. 388, 390 (1971). *Commonwealth* v. *Peterson*, 257 Mass. 473, 478 (1926). *Commonwealth* v. *Trippi*, 268 Mass. 227, 232 (1929). *Commonwealth* v. *Houston*, 332 Mass. 687, 690 (1955). *Commonwealth* v. *Hartford*, 346 Mass. 482, 490 (1963). *Commonwealth* v. *Kendrick*, 351 Mass. 203, 212 (1966). *Commonwealth* v. *Leate*, 352 Mass. 452, 457 (1967). The question whether the defendant availed himself of all "proper means" is one of fact for the jury who must make a determination based on all the circumstances.[5] "Ordinarily the question how far a party may properly go in self defence is a question for the jury . . . ," *Monize* v. *Begaso*, 190 Mass. 87, 89 (1906), quoted in *Commonwealth* v. *Houston*, 332 Mass. 687, 690 (1955), and in *Commonwealth* v. *Kendrick*, 351 Mass. 203, 211 (1966).[6] The judge in this case correctly submitted that question to the jury under proper instructions.

2. The defendant also contends that the trial judge erred in his instructions to the jury by not clearly distinguishing an assault from a battery or giving a definition of the words "overt act." She argues that the jury were left with the impression that a battery must be committed upon a defendant before the right to self-defense would arise.

However, an examination of the judge's charge reveals that an assault was clearly distinguished from a battery. The judge instructed the jury that "an assault, which is

---

[5] Compare the statement by Holmes, J., in *Brown* v. *United States*, 256 U. S. 335, 343 (1921), that "[r]ationally, the failure to retreat is a circumstance to be considered with all the others in order to determine whether the defendant went farther than he was justified in doing. . . ."

[6] While the specific question whether there is a rule as to a duty to retreat where one is attacked at home has not been passed on by the Supreme Judicial Court, it has been said that a defendant's contention "that there is no requirement of retreat . . . where the attack occurs at the place of employment of the one attacked, find[s] no support in our law." *Commonwealth* v. *DeCaro*, 359 Mass. 388, 390 (1971).

an attempt to commit a battery, a touching of the defendant's body — and the touching is the battery — any overt act threatening in nature constitutes an assault . . .." [7] This instruction comports with the definition of assault accepted in *Commonwealth* v. *Slaney,* 345 Mass. 135, 138 (1962), as "an attempt (or offer) to do bodily harm to another by force and violence; or simply, an attempt to commit a battery." Compare the discussion in *Commonwealth* v. *Henson,* 357 Mass. 686, 692-693 (1970).

We conclude that nothing stated by the judge in his charge could have left the jury with the impression that a battery must first be committed before the right to self-defense arises.

3. At the request of the defendant, certain records of the Medfield State Hospital were brought into court. Those records concerned the mental condition of the victim, who had been committed to that hospital in 1965 for observation following two attempts to commit suicide. The records also contained an "aftercare note" dated March 22, 1971. The judge examined the records in the presence of counsel, having been informed by the defendant's counsel that he felt the record might confirm what he anticipated his client would testify to concerning her knowledge of the victim's mental condition. The judge refused to allow defendant's counsel to examine the 1965 record but did permit him to examine two other pages of the record containing the 1971 notes. The judge stated that he felt that the 1965 record was "too remote and not competent here." He ruled that the records of 1965 and of 1971 were "not relevant to any issue on the present posture of the case." He caused the records to be marked for identification and informed defendant's counsel that he could raise the question of their admissi-

---

[7] The judge also stated that "[a] precondition to assert the defense of self-defense is that the person claiming it must have been assaulted by the deceased . . .. There must be some overt act by the deceased threatening in nature to commit a battery. . . .."

bility at a later point in the trial. The defendant subsequently testified in her own defense. At the completion of her testimony on redirect examination her counsel again offered the 1971 portion of the Medfield State Hospital's records, and the judge again ruled them inadmissible. The defendant duly excepted to each of those rulings and to the judge's refusal. The defendant argues that because her counsel was not permitted to examine a large portion of the hospital records, he was not in a position to direct the judge's attention to what part, if any, of the records would be admissible either for the purpose of corroborating his client's testimony as to facts contributing to her state of mind (see *Commonwealth* v. *Tircinski*, 189 Mass. 257, 258 [1905]; *Commonwealth* v. *Rubin*, 318 Mass. 587, 588 [1945]), or for their bearing on whether the victim was the aggressor. See *Evans* v. *United States*, 277 F. 2d 354, 355-356 (D. C. Cir. 1960).

We need not consider whether evidence tending to corroborate the existence of a fact which might have given rise to the defendant's state of mind is relevant on the question of such state of mind or whether the Medfield State Hospital's records were admissible for the purpose of corroborating the defendant's testimony that the victim was the aggressor. Nothing contained in those records was relevant to either of the purposes advanced by the defendant, and the judge's ruling against their admissibility was correct. See Hughes, Evidence, § 281 (1961), and authorities cited therein. In addition, it should be noted that the records could not possibly have had a bearing on the defendant's state of mind as she was not shown to have been aware of their contents.

4. As a part of their on-scene investigation the police looked into some of the rooms on the main floor of the defendant's house but did not otherwise search the premises. One of the officers, in response to a question put to him over the defendant's objection and subject to her exception, testified that he had observed "no weapons" other than the rifle used by the defendant. The

defendant argues that this testimony should have been excluded as it was the result of a warrantless search which went beyond the scope of a search incident to a lawful arrest. We need not rule on that contention. The defendant makes no showing of any harm resulting from that ruling other than to suggest that the testimony was offered "to destroy the defendant's credibility." We note that the defendant later testified that she had never seen a weapon in the house other than the .22 caliber rifle. Our examination of the record leads us to conclude beyond a reasonable doubt that the defendant was not harmed by the admission of this evidence. *Chapman* v. *California,* 386 U. S. 18, 21-24 (1967). *Milton* v. *Wainwright,* 407 U. S. 371, 372-373 (1972). *Commonwealth* v. *Roy, ante,* 14, 21 (1974).

5. The defendant assigns as error the judge's exclusion of a question put by the defendant's counsel during cross-examination of a Commonwealth witness, seeking to elicit the witness' opinion that the defendant was "petrified" of the victim.[8] This assignment fails as no exception was taken to that ruling. *Commonwealth* v. *Foley,* 358 Mass. 233, 236 (1970). *Commonwealth* v. *Henley,* 1 Mass. App. Ct. 564, 568-569 (1973).

6. Finally, the defendant assigns as error the admission of a part of the record of the Norwood Hospital concerning her July 1, 1971, hospitalization for a tonsillectomy.[9] The defendant had testified that shortly before her admission to the Norwood Hospital she had been beaten by the victim and that, as a result, her neck was bruised and her mouth was cut and swollen. The

---

[8] Question ". . . [Y]ou formed the opinion, did you not, that Roberta's state of mind was that she was petrified of John, didn't you?"

[9] The defendant's contention that it was error for the judge to order the admission of a *photocopy* of a portion of the hospital record is not properly before us, as no objection was made or exception taken to this procedure at the trial. *Commonwealth* v. *Foley,* 358 Mass. 233, 236 (1970).

report of the physical examination in the hospital record made no reference to the presence of such conditions.[10] The admissibility of such a record was within the discretion of the judge, as it was competent to rebut the defendant's testimony of having been beaten, which was allegedly one basis for her fear on the day the victim was killed.   Compare *Commonwealth* v. *Dougherty,* 343 Mass. 299, 303-306 (1961).   That the evidence was negative in nature went to its weight rather than to its admissibility.   *McDonald* v. *New York Cent. & H. R. R.R.* 186 Mass. 474, 476 (1904).   *Hough* v. *Boston Elev. Ry.* 262 Mass. 91, 95 (1928).   *Nickerson* v. *Boston & Maine R.R.*   342 Mass. 306, 313 (1961).

*Judgment affirmed.*

---

[10] The report reads: "Physical examination revealed a well developed and well nourished female in no acute distress.   The tonsils were moderate in size without infection.   Examining the heart revealed regular sinus rhythm with Grade II/VI, heard best presternally.   The remainder of the physical was within normal limits."