COMMONWEALTH *vs.* ROBERTA E. SHAFFER.

Norfolk.   February 7, 1975. — April 28, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Homicide.   Self-Defense.   Words,* "Assault."

At the trial of a woman for killing a man in her home, where there was evidence that during an argument between them the victim, who had beaten her on previous occasions, threatened her, that she then ran downstairs to a basement playroom where her children were, that the victim at first threatened to go down and kill her and the children and then said he would leave the house,

but instead returned to the top of the stairs and went down a few steps, whereupon the defendant, without warning the victim, fired one fatal shot at him from a rifle which she had taken from a rack on the wall and loaded, that more than five minutes elapsed between the time she went to the basement and the shooting, and that she had ample opportunity to call the police and to leave the basement with the children, there was no error in instructions to the jury that the defendant, in order to establish that she used deadly force in self-defense, must have had a reasonable apprehension of fatal or serious harm to herself or her children at the hands of the victim and must have "endeavored to avoid any further struggle and retreated as far as she could until there was no probable means of escape," and that the jury must consider all the circumstances relevant to the issue of self-defense, including the fact that the occurrence was in the defendant's own home "where she had a right to be" and "the means of escape from the basement"; this court declined to apply a rule that one assaulted in his own home need not retreat before resorting to the use of deadly force. [508-514]

INDICTMENT found and returned in the Superior Court on January 7, 1972.

The case was tried before *Dwyer*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Melvin S. Louison* (*Jerry E. Benezra & Sheldon J. Cohen* with him) for the defendant.

*John P. Connor, Jr.*, Assistant District Attorney, for the Commonwealth.

TAURO, C.J. The defendant, having been indicted for murder, was tried and convicted of manslaughter[1] and appealed pursuant to G. L. c. 278, §§ 33A-33G. The Appeals Court affirmed the judgment. *Commonwealth v. Shaffer*, 2 Mass. App. Ct. 658 (1974). We granted

---

[1] At the conclusion of the evidence, the judge allowed the defendant's motion for a directed verdict as to so much of the indictment as charged murder in the first and second degrees. He submitted the case to the jury on the charge of manslaughter.

the defendant's application for further appellate review and we affirm the judgment of the Superior Court.

From the evidence, the jury could have found the following: The defendant, who was separated from her husband and in the process of being divorced, resided with her two children in a one-story ranch house in Sharon. The victim, to whom the defendant was engaged, had lived in the house since 1971. The defendant had received several severe beatings at the hands of the victim, and on at least one occasion he had threatened to kill her and the children when asked to leave the defendant's home. Although the defendant loved the victim, she feared for herself and the children, and had persuaded him to seek psychiatric help.

On the morning of the homicide, the defendant was having breakfast with the victim when an argument ensued. At one point, the victim rose, saying, "Never mind. I'll take care of you right now." The defendant threw a cup of tea at him and ran downstairs to the basement playroom, where the children were having breakfast and watching television.

Shortly thereafter, the victim opened the door at the top of the basement stairs and said, "If you don't come up these stairs, I'll come down and kill you and the kids." She started to telephone the police, but hung up the telephone when the victim said he would leave the house. Instead, he returned to the top of the stairs, at which time the defendant took a .22 caliber rifle from a rack on the wall and loaded it. She again started to telephone the police when the victim started down the stairs. She fired a fatal shot. More than five minutes elapsed from the time the defendant went to the basement until the shooting took place.

1. The defendant's principal argument for reversal is that the judge erred in his instructions to the jury regarding self-defense. She contends that the judge in effect instructed the jury that she had a duty to retreat

from her home and that this was error. A review of the charge in its entirety discloses no error.

The defendant asks us in this case to adopt the majority rule that one assaulted in his own home need not retreat before resorting to the use of deadly force. See, e.g., *People* v. *Tomlins,* 213 N. Y. 240 (1914). See also the cases collected in Perkins, Criminal Law, 1005-1012 (2d ed. 1969) and in LaFave and Scott, Criminal Law, § 53, pp. 395-396 (1972). This has never been the law of the Commonwealth, and we see no reason to adopt it now. We prefer instead to follow our long-established rule that the right to use deadly force by way of self-defense is not available to one threatened until he has availed himself of all reasonable and proper means in the circumstance to avoid combat, *Commonwealth* v. *Peterson,* 257 Mass. 473, 478 (1926); *Commonwealth* v. *Trippi,* 268 Mass. 227, 232 (1929); *Commonwealth* v. *Houston,* 332 Mass. 687, 690 (1955); *Commonwealth* v. *Hartford,* 346 Mass. 482, 490 (1963); *Commonwealth* v. *Kendrick,* 351 Mass. 203, 212 (1966); *Commonwealth* v. *Leate,* 352 Mass. 452, 457 (1967); *Commonwealth* v. *DeCaro,* 359 Mass. 388, 390 (1971), and hold that this rule has equal application to one assaulted in his own home.

This rule does not impose an absolute duty to retreat regardless of considerations of personal safety. The proper application of this doctrine does not require an innocent victim to increase his own peril out of regard for the safety of a murderous assailant, Perkins, op. cit., at 1010, because one need only retreat as far as necessary in the circumstances, until there is "no probable means of escape." *Commonwealth* v. *Crowley,* 168 Mass. 121, 126 (1897). Our rule gives due recognition to the value of human life, and requires that all available means for escape be exhausted. "The right of self-defense arises from necessity, and ends when the necessity ends." *Commonwealth* v. *Kendrick, supra.* See Beale, Retreat from a Murderous Assault, 16 Harv. L. Rev. 567 (1903).

To what extent one who is threatened may go in defending himself and whether he has availed himself of all proper means of escape ordinarily are questions of fact for the jury, to be decided in light of all the existing circumstances. *Commonwealth* v. *Houston, supra. Commonwealth* v. *Kendrick,* 351 Mass. at 211 (1966). The jury must receive complete instructions from the trial judge, including an explanation of the proper factors to be considered in determining the issue of self-defense. The fact that one is threatened in his own home or in a place where he has exclusive right to be is one of the more important factors in making such determination, but this factor is not without limitations in its application. We stated in the *Kendrick* case that, " [i]n passing upon the reasonableness of the force used by the defendant, . . . the jury should consider evidence of the relative physical capabilities of the combatants, the characteristics of the weapons used,[2] and the availability of maneuver room in, or means of escape from, the . . . area [in which the confrontation occurs]." 351 Mass. at 212 (1966) (fn. added). We would add that in determining whether all proper means have been taken to avoid the use of deadly force, the jury should be instructed that the location of the assault is an element of major importance in their consideration. We hold that one assaulted in his own home does not have the unlimited right to react with deadly force without any attempt at retreat. However, the importance of the

---

[2] "As a practical consideration, it is important to bear in mind that the 20th century has introduced a multitude of deadly weapons . . . [m]any of . . . [which] are operative at long range, making attempts at escape by a prospective victim highly speculative and totally ineffectual." Recent decisions, 9 Duquesne L. Rev. 313, 314 (1970-1971). See Beale, loc. cit., at 580. We believe that the nature of the weapons involved is a crucial consideration in determining both the reasonableness of the force exerted and the reasonableness of attempts to retreat.

location of the assault and the surrounding circumstance should be stressed to the jury.

In the instant case, the judge charged the jury that, in order for there to have been a proper exercise of self-defense, "[i]t must appear that the defendant endeavored to avoid any further struggle and retreated as far as she could until there was no probable means of escape. In this connection, you may consider that the assault, if you find one took place, by the deceased took place in the home of the defendant where she had a right to be." This instruction, especially when considered with the charge as a whole, *Commonwealth* v. *Pinnick*, 354 Mass. 13, 15 (1968); *Commonwealth* v. *Benders*, 361 Mass. 704, 707 (1972), made clear that the location of the assault in the defendant's home was a proper factor to be considered. Reading the instructions as a whole, there is no merit to the defendant's argument that, in the circumstances of this case, they were misleading.

The defendant further argues that even if we do not adopt the majority rule, in the circumstances of the present case, the judge should have instructed the jury that the defendant, having already run to the basement, had no duty to retreat further. In doing so, she places much reliance on *People* v. *Tomlins*, 213 N. Y. 240 (1914), and *State* v. *Bonano*, 59 N. J. 515 (1971). However, these cases make clear that even where no retreat is required, there are limitations to the use of deadly force in self-defense.

In the *Tomlins* case, at 244, the court said, "We think that if the situation justified the defendant as a reasonable man in believing that he was about to be murderously attacked, he had the right to stand his ground." And in the *Bonano* case, at 518, the court said, "[S]elf-defense may be successfully invoked only in those cases where the act of killing is necessary or reasonably appears to be so in order to preserve the defendant's life or to protect him from serious bodily harm."

In the instant case, the jury could have found that the defendant was not in imminent danger for her life or of serious injury at the hands of the victim. There was no evidence that he had a dangerous weapon at any time. He was only two or three steps from the top of the stairway when he was shot. The defendant had ample opportunity to call the police. She could have left the basement with her children. A period of five minutes had elapsed from the time the defendant first went down to the basement until the shooting occurred. The defendant did not warn the victim that she would shoot if he continued his descent down the stairway. There was evidence from the defendant's husband that she had considerable experience in the use of that rifle. One shot was sufficient to kill the victim.

In these circumstances, there was no error in the judge's instruction to the jury, on the question of reasonableness, that the jury could consider the "means of escape from the basement area." This is clearly a part of the totality of circumstances which must be considered in every case.

The judge's instructions were in keeping with our own rule that "[i]n order to create a right to defend oneself with a dangerous weapon likely to cause serious injury or death, it must appear that the person using the weapon had a reasonable apprehension of great bodily harm and a reasonable belief that no other means would suffice to prevent such harm." *Commonwealth* v. *Houston,* 332 Mass. 687, 690 (1955).

For reasons as stated, we believe the judge correctly instructed the jury that "[a] precondition to assert the defense of self-defense is that the person claiming it must have been assaulted [threatened] by the deceased in order to give rise to this defense whatsoever. There must be some overt act by the deceased threatening in nature to commit a battery likely to produce death or serious physical harm to the defendant or her children."

There is no merit to the defendant's argument that the word "assault" means a battery on the defendant. The legal definition of assault is an attempt or threat to do bodily harm, and the judge made that clear to the jury.

In sum, the judge's instructions to the jury required them to consider the totality of circumstances in deciding whether the shooting was in self-defense. There was no error.

2. The defendant has argued various other assignments of error relating to the jury charge and to the admission of evidence. The Appeals Court discussed each of these assignments in a thorough and well reasoned opinion. *Commonwealth* v. *Shaffer*, 2 Mass. App. Ct. 658 (1974). No further discussion is necessary. We find no error.

*Judgment of Superior Court affirmed.*