**STATE**

v.

**Raymond GUILLEMET.**

**No. 80–361–C.A.**

Supreme Court of Rhode Island.

June 18, 1981.

Reargument Denied July 9, 1981.

Dennis J. Roberts II, Atty. Gen., Charles M. Nystedt, Sp. Asst. Atty. Gen., for plaintiff.

Barbara Hurst, Asst. Public Defender, for defendant.

## OPINION

KELLEHER, Justice.

Raymond Guillemet (Guillemet) was tried before a Superior Court jury in Providence County on a one-count criminal information that charged him with having assaulted Lemuel A. Johnson (Johnson) with intent to commit murder and was found guilty of having assaulted Johnson with a dangerous weapon. After posttrial motions for a new trial and a reduction of postconviction bail had been denied, a ten-year prison sentence was imposed. The decisive issue in the appeal presently before us is whether the trial justice erred in refusing to charge the jury on the doctrine of self-defense. Guillemet claims error. We disagree.

Much of the evidence is uncontradicted. At trial time in March 1980, Johnson and his girl friend, Mary, had been living together for somewhere between four and five years in the first-floor premises of a three-tenement dwelling located on Harrison Street in Providence. For a substantial portion of this period, Johnson and Guillemet worked in Providence as school-bus drivers. After the duo had completed their morning deliveries, they would return to the Harrison Street residence where they would while away the hours chatting until it was time to pick up the students for their afternoon homeward trip.

Sometime in the fall of 1978, Johnson was arrested and pleaded guilty to a charge that alleged that he had been selling liquor at the Harrison Street address without benefit of a license. Guillemet told the jury that Johnson blamed him for telling the police about his entrepreneurial endeavor. Later, according to Guillemet, he met Johnson at a Pine Street residence in Providence and was told by Johnson, "I'm going to smash your face in because you called the man on me. * * * I'm going to kill you. * * * I'm going to waste you." Johnson, on the other hand, denied that he had threatened Guillemet and insisted that prior to January 20, 1979, he and Guillemet had been the best of friends.

Mary, Johnson's girl friend, testified that at approximately 5:45 p. m. on January 20, 1979, she and her four children arrived in front of their Harrison Street home. At that time, Mary saw Guillemet standing on the front porch with a "pool stick" in his hand. However, when Mary took a second look she noticed that the pool stick was actually a sixteen-gauge, double-barrel shotgun. Mary and Guillemet exchanged words on the porch as she ushered the children into the house. Johnson, who at that

time was in the house, heard the front-door commotion. Upon opening the front door, he observed Guillemet at the bottom step "arguing with the old lady." At this point, Johnson closed the door and went back into the house, but "somehow or another" Guillemet was behind him. When Johnson noticed the unexpected visitor and asked him to sit down and talk the matter over, Guillemet allegedly replied, "I'm going to kill you," and with that, the weapon discharged and Johnson was wounded in the left hip.

Guillemet, a former paratrooper and Vietnam veteran, acknowledged that when he and Mary met at the front porch, he was ready for any eventuality. At the time of the arrest, he was carrying a shotgun and ten rounds of ammunition. Two of the ten rounds were in the weapon. He explained his reliance on the shotgun because "I was afraid that Lemuel had a gun also * * * and I figured if he had a gun too, then it's best to be prepared." Guillemet also told the jury that when he saw Johnson at the front door, he told Johnson that he wanted to talk with him, but Johnson sabotaged any peace negotiations when he replied, "I'll fuck you up," as he headed toward the tenement's interior. Guillemet conceded that when he saw his fellow bus driver head toward the rear of the tenement, he followed him because "I thought he was going in the back to get a gun or to get something to hurt me. * * * When he went toward the back, I went in behind him." There is no question that Guillemet entered Johnson's tenement armed with a shotgun and shot Johnson as Johnson was heading toward the rear portion of the tenement.

The trial justice in refusing to charge on self-defense, said "he couldn't see" how he could grant Guillemet's request when it was obvious that Guillemet, while carrying a shotgun, had entered Johnson's abode and there fired the weapon. In essence, the trial justice's remarks bring into focus the duty to retreat by an individual who claims that he or she, in injuring another, was simply defending himself or herself.

Back before the turn of the century, this court in *State v. Sherman*, 16 R.I. 631, 633–34, 18 A. 1040, 1041 (1889), observed that wrongfully assaulted persons need not retreat but could stand fast and defend themselves, using so much force as was necessary for their protection. Again, in *Martin v. Estrella*, 107 R.I. 247, 253, 266 A.2d 41, 46–47 (1970), we said that a person who reasonably believes that he or she is in imminent danger of harm at the hands of another may defend himself or herself without the necessity of waiting for the first blow to land as long as the individual uses only such force as is reasonably necessary to protect himself or herself. Both Sherman and Estrella employed their fists as they sought to defend themselves.

In *State v. Ballou*, 20 R.I. 607, 610–11, 40 A. 861, 863 (1898), the charge was manslaughter. The defense was self-defense with a stone. The trial justice had charged in accordance with *Sherman* but added a proviso that told the jury that if they found that Ballou had run toward the assaultee, Ballou could not rely on the ground of self-defense. In *Ballou*, the court referred with approval to the following charge given by the trial justice in *State v. Congdon*, a case reported in 14 R.I. 458 (1884),[1] in which the defense to a murder was that of self-defense:

> " 'The rule of law upon that point is, that when one is attacked by another under such circumstances as to lead him to apprehend peril to his life, or great bodily harm, he may kill his assailant, provided he cannot otherwise protect himself, as by retreating from danger, by warding off the attack by a weapon not deadly, by disabling his adversary without killing him, or in any other way preserving his own life and person. * * * A man cannot provoke another into assault, and then take advantage of that assault to take his life.' " *State v. Ballou*, 20 R.I. at 610–11, 40 A. at 863.

*Ballou* makes it clear that one may not invoke the doctrine of self-defense if he or she has instigated the combative confronta-

---

1. The reported case is in no way concerned with the charge given by the trial justice.

tion. Self-defense is grounded on necessity, and one cannot provoke a difficulty, thus creating the necessity, and then justify the resulting homicide or injury as an act of necessity and self-defense. *State v. Millett*, 273 A.2d 504 (Me.1971).

Here, if we view the evidence relating to the self-defense issue in the light most favorable to Guillemet, he has failed to raise the issue so that it could properly be considered by the jury. We are totally uninformed about the nature of the weapon used by the defendant in *State v. Congdon*, but we do know that when Guillemet appeared on Johnson's front steps, he was armed with a weapon capable of inflicting death or serious bodily injury. The doctrine of retreat has been broadly defined as requiring one who is attacked to withdraw before employing deadly force in his own defense when an open, safe avenue of escape is available and he is consciously aware of this fact. He may stand his ground and not retreat if he employs less than deadly force. *State v. Bonano*, 59 N.J. 515, 284 A.2d 345 (1971).

One of our next-door neighbors, the Supreme Judicial Court of Massachusetts, has frequently expressed the principle that bars Guillemet's self-defense claim by ruling that the right to use deadly force by way of self-defense is not available to the one threatened until he has availed himself of all reasonable and proper means to avoid combat. *Commonwealth v. McGuirk*, 376 Mass. 338, 380 N.E.2d 662 (1978); *Commonwealth v. Shaffer*, 367 Mass. 508, 326 N.E.2d 880 (1975); *Commonwealth v. DeCaro*, 359 Mass. 388, 269 N.E.2d 673 (1971); *Commonwealth v. Leate*, 352 Mass. 452, 225 N.E.2d 921 (1967).

Here, Guillemet made no effort whatsoever, to avoid the combat or to attempt retreat. Moreover, there was no evidence that when he first arrived at Johnson's front door, he was then in imminent peril of bodily harm. In fact, Guillemet's actions in advancing into Mary and Johnson's residence and in shooting Johnson make one wonder whether Guillemet subscribes to the preemptive-air-strike strategy advocated not too many years ago by several responsible members of the United States Air Force. Guillemet's failure to take any evasive action whatsoever rightfully deprived him of the opportunity to claim self-defense.[2]

The defendant's appeal is denied and dismissed, and the judgment of conviction is affirmed.

---

**2.** A majority of jurisdictions make an exception to the necessity for retreat when the attack takes place within the occupant's own home, and the exception prevails regardless of whether those involved in the dispute are co-occupants or intruders. *See State v. Bobbitt*, 389 So.2d 1094, 1097 n.4 (Fla.App.1980); *see also* Annot., 26 A.L.R.3d 1296 (1969). In *Commonwealth v. Shaffer*, 367 Mass. 508, 326 N.E.2d 880 (1975), the Supreme Judicial Court specifically refused to recognize this exception. We shall defer any consideration of the exception until such time as the appropriate case arises.