COMMONWEALTH *vs*. JOHN J. GREGORY.

Middlesex.   January 11, 1984. — March 22, 1984.

Present: BROWN, DREBEN, & WARNER, JJ.

*Self-Defense. Practice, Criminal,* Instructions to jury.  *Evidence,* Expert opinion.

At the trial of a murder case there was prejudicial error in the judge's instructions to the jury on self-defense in that the judge failed to make clear that one assaulted in his own home need not retreat before resorting to the use of deadly force. [653-654]

At the trial of a murder case, the judge did not err in permitting a medical expert, who had performed the autopsy on the victim's body, to testify that the absence of abrasions, contusions, or scratches on the victim "may indicate that the inflicted wounds were formed without any defensive movement or act of the deceased." [654-655]

INDICTMENT found and returned in the Superior Court Department on July 28, 1982.

The case was tried before *Dolan*, J.

*Stephen Hrones* for the defendant.

*Patricia A. McEvoy*, Assistant District Attorney, for the Commonwealth.

BROWN, J. The defendant appeals from his conviction of manslaughter on an indictment charging murder. At trial, the defendant admitted that he had killed the victim, but claimed that he acted in self-defense. The incident which gave rise to the indictment took place in the defendant's bedroom in his home. The defendant claims that the judge's charge on self-defense incorrectly implied, contrary to the recently enacted so-called "castle" law (G. L. c. 278, § 8A), that the defendant had a duty to retreat from an assailant while in his own home. The defendant also raises two less substantial evidentiary questions. We think that the judge misstated the law now applicable to the circumstances here. We reverse and remand this case to the Superior Court for a new trial.

Prior to the enactment of G. L. c. 278, § 8A, the law imposed a duty on the occupant of a dwelling to retreat before resorting to the use of deadly force for self-defense. *Commonwealth* v. *Shaffer,* 367 Mass. 508 (1975). In *Shaffer,* the court was asked to adopt the majority rule that one assaulted in his own home need not retreat before resorting to the use of deadly force. The court declined, stating that "[w]e prefer instead to follow our long-established rule that the right to use deadly force by way of self-defense is not available to one threatened until he has availed himself of all reasonable and proper means in the circumstance to avoid combat [citations omitted], and hold that this rule has equal application to one assaulted in his own home." *Id.* at 511. See also *Commonwealth* v. *Gagne,* 367 Mass. 519, 524-525 (1975), and cases cited. With the enactment of § 8A the rule announced in *Shaffer* was modified so that now there is no obligation on the part of an occupant of a dwelling to retreat if he acts in a reasonable belief that a person unlawfully in his dwelling is about to inflict great bodily injury or death upon him.[1]

In the present case, the defendant made a timely objection to the judge's charge. The thrust of the defendant's claim is that because the incident occurred in his dwelling place the judge should have limited the instructions on self-defense merely to the question whether the defendant was reasonable in the use of the means by which he defended himself. In the defendant's view, therefore, it is not relevant whether he had exhausted all means of escape. The Commonwealth contends, however, that when the judge's instructions are read in their entirety, "it is clear that a reasonable juror would [have understood] that the

---

[1] General Laws c. 278, § 8A, inserted by St. 1981, c. 696, provides:

"In the prosecution of a person who is an occupant of a dwelling charged with killing or injuring one who was unlawfully in said dwelling, it shall be a defense that the occupant was in his dwelling at the time of the offense and that he acted in the reasonable belief that the person unlawfully in said dwelling was about to inflict great bodily injury or death upon said occupant or upon another person lawfully in said dwelling, and that said occupant used reasonable means to defend himself or such other person lawfully in said dwelling. There shall be no duty on said occupant to retreat from such person unlawfully in said dwelling."

defendant's obligation to avoid physical combat did in fact mean a duty to avail himself of all methods for doing so other than retreat.'' We, of course, must consider the charge as a whole in order to determine its adequacy and the over-all impact on the jury. *Commonwealth* v. *Sellon,* 380 Mass. 220, 231-232 (1980).

The trial court's instructions here were substantially in accord with the law prior to the enactment of § 8A. The following illustrates the language that permeated the charge on self-defense: ''A person who is or reasonably believes that he is about to be attacked may repel deadly force with deadly force, so long as the danger appears to exist and *there is no* opportunity to avoid physical combat'' (emphasis supplied).[2] Although a portion of the judge's instructions did track substantially the language of § 8A, it was immediately followed by the language: ''The obligation not to retreat does not totally relieve a person from availing himself of all proper means to avoid physical combat. You are not required to retreat from your own home.''[3] This language may have confused the jurors. Moreover, the latter statement is flawed because the statute provides that there is no duty on the part of an occupant to retreat from *an unlawful intruder*.

The Commonwealth maintains that by integrating established principles of self-defense[4] with the new statutory provision the judge's instructions, when considered as a whole, ar-

---

[2] The judge's instructions drew extensively from the leading case of *Commonwealth* v. *Kendrick,* 351 Mass. 203, 211-212 (1966), decided well before the decision in *Commonwealth* v. *Shaffer, supra* and the enactment of G. L. c. 278, § 8A. Other examples of such references are:

''If the deceased . . . initiated the assault while the defendant was, in face, *cornered* so that the defendant, in fact, feared and reasonably feared that he was in danger . . . , then the defendant had a right to use whatever means necessary to avert the threatened harm'' (emphasis supplied).

''Now, in passing upon the reasonableness of force used by the defendant, you consider, a number of things . . . What was the availability of any *maneuvering* from the place or *means of avoiding physical combat wherever the homicide took place*'' (emphasis supplied)?

''[T]he right of self defense does not accrue until the defendant has *availed himself of all proper means to avoid* physical combat'' (emphasis supplied).

[3] Later in the charge the latter sentence was stated correctly, but the former sentence was repeated in the same form.

[4] See, e.g., *Commonwealth* v. *Harrington,* 379 Mass. 446, 450 (1980).

ticulated a clear and acceptable definition of the right of nonre-treat. The argument continues that the judge carefully avoided the use of such words as ''retreat'' or ''escape.'' These arguments lack substance for two reasons. First, the trial judge's interpretation of § 8A was incorrect. The language of § 8A is not ambiguous. It states that ''[t]here shall be no duty on said occupant to retreat from such person unlawfully in said dwelling.'' Second, the failure of the judge specifically to use the words ''retreat'' or ''escape'' is not determinative. Indeed, the court in *Shaffer* used the phrases ''avoid combat'' and ''availability of maneuver room'' interchangeably with ''retreat'' and ''escape.'' 367 Mass. at 511-513. See also *People* v. *Bailey,* 15 Ill. App. 3d 558, 560-561 (1973) (holding that where the defendant was not required by law to exhaust all reasonable means of escape before resorting to the use of deadly force to defend herself and the trial court's instructions placed an obligation on her to exhaust all reasonable means of escape, there was prejudicial error). We think that in the circumstances the judge's instructions may well have left the jury without any firm understanding as to what ''maneuvering,'' ''retreat,'' and other such terms, e.g., ''all proper means to avoid physical contact,'' meant in the context of self-defense.

We touch briefly on the defendant's remaining claims of error.

1. The defendant claims the judge erred in allowing Dr. Sanchez, a medical expert, to testify to certain matters.[5] In recent years, the test to determine what is a proper subject of expert testimony has focused increasingly on whether, in the wide discretion of the trial judge, the subject was one on which the opinion of an expert would have been of assistance to the jury without undue prolongation of the trial and undue exploration of collateral matters. See, e.g., *Commonwealth* v. *Francis,* 390 Mass. 89, 98 (1983), where the nature of the judge's discretion was explored extensively.

Dr. Sanchez had conducted the autopsy of the victim. On direct examination the doctor acknowledged that he was familiar

---

[5] There is no claim that the witness was not qualified or that there was not an adequate opportunity for cross-examination.

with the term "defensive wound."[6] He then was asked: "Doctor, based on your medical opinion, if you have one, Doctor, what does the absence of abrasions, contusions, or scratches indicate to you?" Over the defendant's objection, the doctor answered: "That may indicate that the inflicted wounds were formed without any defensive movement or act of the deceased." There was no error of law or abuse of the broad discretion usually accorded trial judges with respect to the admission of expert testimony. See *Commonwealth* v. *Devlin,* 365 Mass 149, 152 (1974). In the circumstances, the trial judge could reasonably think that the testimony would give "appreciable assistance" to the trier of fact. See *Commonwealth* v. *Fournier,* 372 Mass. 346, 350 (1977), quoting from *Commonwealth* v. *Boyd,* 367 Mass. 169, 182 (1975). The fact that the witness used the word "may" does not indicate that his answer was merely guess or conjecture. Compare *Afienko* v. *Harvard Club of Boston,* 365 Mass. 320, 334-335 (1974). "[I]t is apparent in reading his entire testimony that his [opinion] rested on reliable [medical] data and assumptions that were plausible." *Calvanese* v. *W.W. Babcock Co.,* 10 Mass. App. Ct. 726, 731 n.6 (1980). Thus the answer here had probative value because it was based on facts, proved or assumed, sufficient to support the conclusion reached.

2. The defendant claims that the judge also erred in permitting the medical expert to answer a question that went to an ultimate fact. We cannot agree. This aspect of the instant case is controlled in material respect by *Commonwealth* v. *Montmeny,* 360 Mass. 526, 527-530 (1971). "[A] question which calls for an opinion which is in the domain of the expert's professional knowledge is not necessarily to be excluded merely because the conclusion of the witness reaches or approaches the ultimate issue before the jury." *Id.* at 527-528. See *Commonwealth* v. *LaCorte,* 373 Mass. 700, 705 (1977), and cases cited. The defendant's reliance on *Commonwealth* v. *Gardner,* 350 Mass.

---

[6] The witness stated: "Those wounds are usually acquired while a person has been, or is being attacked by another person, and in the process, they usually place their hands in front of the instrument to avoid other wounds, and that results in the presence of cutting wounds or blunt trauma in the area of the hands, on the arms, and forearms."

664, 665-667 (1966), is misplaced, as there, unlike here, the medical expert's opinion was not based on matters within his professional competence, but on the emotional state of the victim and the victim's statement to him of what had happened.

*Judgment reversed.*

*Verdict set aside.*